186 F.Supp. 105 (1960)
AETNA INSURANCE COMPANY, Plaintiff,
v.
Louis SACHS, Defendant.
No. 58 C 18(3).
United States District Court E. D. Missouri, E. D.
February 11, 1960.
*106 Adolph K. Schwartz, St. Louis, Mo., for plaintiff.
Murray Steinberg, St. Louis, Mo., for defendant.
WEBER, District Judge.
This matter arises upon plaintiff insurance company's Complaint for Declaratory Judgment. It seeks determination of liability under its policy No. PPF-Mo 1-242411, issued to defendant January 29, 1956, for a term of 3 years and which policy contained an attached personal property rider. This rider, with a $25 deductible provision, insured certain listed property against loss or damage. The defendant had made a claim against plaintiff for damage caused to carpeting and after plaintiff's complaint was filed he answered and filed a counterclaim in which he sought to recover $7,500 plus damages for vexatious delay and reasonable attorney's fee. The cause was tried before the Court, without a jury.
The law has always been a hard taskmaster and requires of its advocates a serious approach and stern visaged application. When it comes face to face with life, as it unfolds in the drama of the courtroom, the law sometimes reaches its serious, stern results from facts which have been compiled with humor. So  while the end results of the law are deadly serious  there is about the lawyer (and even judges, occasionally) a spark of the humor of life  and a need for it. So let it be with this opinion; for, while the end result is most serious to both plaintiff and defendant, what has brought about the necessity for the end result, is most humorous.
Our factual situation obviously had its inception when defendant obtained the insurance policy from plaintiff. If all had proceeded in the normal course of human events from that point on, this suit would never have been brought, for plaintiff insured against and was prepared for the usual expectancies of fire, wind and rain. But, defendant purchased, and plaintiff issued, the rider, known commonly in the trade as a "floater". Now, "floater" provisions are covered by (and in this instance, rightly so) the rules of "maritime" law, for, the risks are sometimes unusual.
In any event, the policy in question provided generally for damages and loss to the furnishings and personal property of the defendant for reasons other than fire, wind and rain, to-wit, theft and other fortuitous circumstances. What subsequently transpired after issuance brings into play the "floater" provisions of this policy.
Defendant and wife purchased in October 1957 a "French Poodle", which they appropriately and fascinatingly named "André". According to defendant, André was properly trained and "broke" and life was pleasant for the defendant and his wife and peaceful for the plaintiff until defendant and wife went on a vacation and left André at a kennel for the duration. When they returned their first thoughts were of André and they promptly brought him back to their chateau, blissful in the reunion. But the home-like serenity was soon shattered, for madam soon spied André with his leg hoisted in masculine canine *107 fashion and his purpose had been, and was being, accomplished. Madam did not testify, but defendant said she told him of the occurrence and he promptly surveyed the living room, dining room and hall and found signs of André's misfeasance. His next step was to notify his insurance agent and make claim under the "floater" provisions of the policy.
There was some dispute between the parties as to whether proper notice was given and claim made, but the Court is convinced that defendant gave notice within the terms and provisions of the policy and plaintiff cannot escape liability on that point. Plaintiff did send an adjuster to the premises to survey the effects of where André, the French Poodle, had popped in, piddled and popped out. In fact, he testified that André gave a "command performance" while he was there.
Also, a rug specialist was sent to the premises and he too made a survey. He found spots ranging in diameter from the size of a "dime" to nine inches, and in number from 75 to 80. He testified that one or two could have been repaired, but not that many, for it would have been impossible to match the yarn in the rug and the patches and repairs would have been as obvious as André's tell-tale marks. He also said that the spots would have been readily noticeable from the time they dried and that they extended throughout the living room, dining room, hall, stairway and were on the rug, furniture and drapes; which gives rise to the conclusion that André had the run of the house.
The owner of the kennel, where André spent just two weeks, gave as his opinion that a dog with good habits would not lose them in two weeks; that he properly cared for the dog and had provisions for outside relief facilities for the dogs in his kennels; and, that four to five times a day would be a maximum amount of calls to nature for any dog, including André.
Plaintiff brought this declaratory judgment suit to determine its liability for threatened prosecution by the defendant and contended that this was just too many incidents to be liable for. Defendant answered and denied, claiming surprise in André's change of habits and further contended that there were but four or five incidents and the rest of the spots were pure dribbles, and he counterclaimed for total loss of carpeting and for damages in the amount of $7,500 therefor.
At the rate of four or five calls per day, at best it would have taken André about sixteen days to make all the spots. But, on the theory that each incident is entitled to a dribble or two, it could probably be said, without fear of contradiction, that the spotting represents ten to twelve incidents and probably over a period of a week. In that length of time if the spots had not been seen, they at least should have been recognized by other sensory perception.
A review of the search books to the law reveals no cases in point. Either there never was a poodle as prolific as André, or, before such insurance, people caught them, put their nose in it and threw them outside. Thus, we have a case of first impression. The testimony is that André met his demise, by truck, some few weeks after his prolific, piddlin' propensities were discovered and he, therefore, can never be made aware of his place in history unless he rests in some Valhalla from whence he can eat, sleep and answer his calls to nature, while still permitted to glance back occasionally to review the results, devastation, chaos and the indecision caused by his handiwork.
The unprecedented problem requires some decision, for the law, right or wrong, must conclude litigation. I would conclude this episode in the following manner:
For one or two occasions of André's imprudence we might expect the plaintiff to be liable, even though it is stretching the credulity of any sage of the law to put permission and right upon liability where a person gives a canine pet the right to perambulate and pounce unrestrained throughout the house. Such *108 privileges, even to a poodle, seem more the part of valor than of wisdom, especially where the play pen is a $7,500 rug and expensive furniture and drapes.
The law has always allowed each dog its first bite, for then the owner is put on notice of its dangerous tendencies. I would even go one or two better in incidents such as this and would have allowed recovery for two or three incidents. This would give the insured some opportunity, through sight or smell, to discover the occurrence, prevent its repetition and make claim for that which seems a fortuitous circumstance or event. But, to allow for such prolific indiscretions, ad infinitum, is beyond credulity and borders onto wanton recklessness and disregard for which a person should not be rewarded.
While André might not be expected to know the terms and conditions of plaintiff's policy, it seems most fantastic that defendant should be able to contend that André's indiscretion was fortuitous. Judge Hand, in Mellon v. Federal Ins. Co., D.C., 14 F.2d 997, loc. cit. 1004, said: "* * *, even in an `all risk' policy, there must be a fortuitous eventa casualty to give rise to any liability for insurance."
In the law, "fortuitous" means "by chance" and "by accident". It seems to me that it is just "by accident" that André didn't do what he did, much before the alleged occurrence, and, if "by chance" he didn't, it was just too much, and too often, to require plaintiff to pay for it.
One cannot stand by and see damage being done, allow it to be done and then collect for the total loss. In other words, one cannot be present and see a fire when it first originates and at a time when something could be done to extinguish it, then go off and allow the damage to be done and attempt to collect for the total damage. Such conduct constitutes culpable negligence and precludes a recovery. Fleisch v. Insurance Co. of North America, 58 Mo.App. 596, 606.
An insurer is not liable for reckless and inexcusable negligence. Vol. 5, Appelman Insurance Law and Practice, § 3114; Vol. 6, Couch Cyclopedia of Insurance Law, § 1492. Neither is an insurer liable for losses resulting from inherent vice, defect, or infirmity in the subject matter insured. Chute v. North River Ins. Co., 172 Minn. 13, 214 N.W. 473-474, 55 A.L.R. 938. Further, defendant had an obligation under Paragraph 20 of the policy in question to safeguard the property insured thereunder. Under the terms of the policy defendant cannot recover where he discovered, or should have discovered, the damage long before it reached its final extent, in time thereafter to have safeguarded the property and have kept the damage to a minimum. See Yellin, et al. v. National Surety Co., Mo.App., 282 S.W. 520, 521.
In the case at bar, defendant allowed and permitted the damage to become so extensive that he is now claiming a total loss, whereas, plaintiff, if liable at all, should have been exposed only to a minimal loss.
I would say that defendant, because of such gross negligence and indiscretion in permitting André to roam the house at will, hoisting his leg at random, probably yipping and yiping in his canine Utopia, should not be allowed to recover. Certainly, a dog can be controlled by his master, and while a master cannot expect perfection from a dog, even a poodle, he should be ever aware to keep him from expensive parts of the house where he might do damage with either end. Further, defendant here should not be allowed to collect for a total loss which he himself could have kept at a minimum by the exercise of a little discretion, observance or care.
So, in the Eastern District of Missouri, while we love our dogs, let it be the law that we don't collect for so many puddles made by poodles, even under the "floater" provisions of a policy with "maritime" law as precedent. It is this Court's conclusion that judgment should be entered declaring that plaintiff is not liable under the terms and provisions of *109 its policy of insurance for the damage caused to the carpeting in question under the circumstances proven and existing in this case. Further, that defendant should not be allowed to recover upon his counterclaim against the plaintiff.
In other words, I am saying to the defendant, "You cannot recover"; to the plaintiff, "You may continue your policy in peace"; and to the beloved little French poodle, the proximate cause of this litigation and discourse, I say, "Paix á toi aussi, André."
This Memorandum Opinion shall be filed as the findings of fact and conclusions of the Court herein and judgment will be entered in accordance herewith.