**REDNA MARINE CORPORATION,**
Plaintiff,

v.

**Kenneth G. POLAND, Insurance Corporation of Ireland, Ltd., and Frank B. Hall & Co., Inc., Defendants.**

**No. 68 Civ. 4064.**

United States District Court
S. D. New York.

Jan. 23, 1969.

82

Donald F. Mooney, New York City, for plaintiff.

Mendes & Mount, New York City, for defendants.

MANSFIELD, District Judge.

In this action by an assured against underwriters (Kenneth G. Poland and Insurance Corporation of Ireland, Ltd.) for recovery of $170,000 on a policy of marine insurance and against the insurance broker (Frank B. Hall Co. Inc.) who placed the insurance for damages, plaintiff, Redna Marine Corporation ("Redna"), moves for summary judgment pursuant to Rule 56, F.R.Civ.P. The complaint alleges two claims. The first claim is against the underwriters on the policy for losses allegedly covered by the policy on which plaintiff is a named assured. The second claim is that Frank B. Hall & Co. Inc. ("Hall"), the broker who arranged the insurance, "willfully and wrongfully failed and refused to furnish plaintiff with particulars of the insurance" to plaintiff's damage. Since the papers submitted in support of and opposing this motion indicate that there are genuine disputes as to certain material facts in connection with both claims, plaintiff's motion is denied with the qualifications set forth in this opinion.

Plaintiff's first claim is based upon damage to 11 machines owned by Redna and leased by Redna to Paget Trading Corporation in care of Westwaters Management Company on April 24, 1967. No substantial controversy is found to exist with respect to the following facts:

The 11 machines are grainveyors owned by Redna and leased by it to Paget Trading Corp., which were used in the discharge of grain from tanker vessels, particularly in foreign ports in the Middle East and Asia. The lease between Redna and Paget Trading Corp. provided that the lessee would arrange for insurance for the benefit of the les-

sor. The lessee, through its management company, obtained issuance of the policy on which this action is brought.[1] The effective date of the policy was February 1, 1967; it was in effect for one year thereafter and was extended for an additional month so that it remained in effect until February 29, 1968.

At the time the insurance policy became effective Redna owned 11 grainveyors which were aboard the vessel KOLL; these machines were transferred to the vessel DOVREFJELL at a Red Sea anchorage during the month of February 1967. The DOVREFJELL sailed into Corpus Christi, Texas, in March 1967. During the time the vessel was in port at least two of the machines were replaced; the DOVREFJELL departed from the United States on or about April 24, 1967. At some point during the voyage of the DOVREFJEll, after discharge of the grain cargo was completed, the machines were transferred to the vessel INTREPID (formerly the KOLL). The INTREPID arrived at Texas City, Texas on February 2, 1968.

While the machines were on the dock at Texas City a survey was conducted on March 4, 5 and 6, 1968 by one Russel

Brierly whose report of March 9 is annexed to the moving papers. This survey was attended by W. R. Sanders, president of Redna and John Bencal, Jr., a representative of the defendant underwriters. With respect to the cause of the damage to the machines he found as follows:

"I further confirm that the damages were unusual and extraordinary and under no circumstances could be attributed to normal wear and tear. It would appear from my personal examination of the equipment that the loss was caused by negligence of the crew in handling the equipment, improper stowage of the equipment, and the crew's failure to protect the equipment from perils of the seas, such as heavy weather and salt water."

It was Mr. Brierly's opinion that the machines were at that time "a constructive total loss" on the basis of repair and part replacement figures then available. The cost of repairing the machines was estimated at $221,972.64 based on estimates submitted by local Texas repairers, including Marine Maintenance Co. of Houston. This conclusion was concurred in and signed by Mr. Bencal, the underwriters' representative, "without prejudice."

---

1. The policy named plaintiff as the assured and loss payee. It stated that the agreed valuation of the equipment was $170,000, and provided coverage commonly described as "all risks" cargo insurance, as follows:

"*All Risks Clause*

5. This insurance is against all risks of loss of or damage to the subject-matter insured but shall in no case be deemed to extend to cover loss damage or expense proximately caused by delay or inherent vice or nature of the subject-matter insured. Claims recoverable hereunder shall be payable irrespective of percentage.

"*Constructive Total Loss Clause*

6. No claim for Constructive Total Loss shall be recoverable hereunder unless the goods are reasonably abandoned either on account of their actual total loss appearing to be unavoidable or because the cost of recovering, reconditioning and forwarding the goods to the destination to which they are insured would exceed their value on arrival.

"*Seaworthiness Admitted Clause*

8. The seaworthiness of the vessel as between the Assured and Underwriters is hereby admitted.

In the event of loss the Assured's right of recovery hereunder shall not be prejudiced by the fact that the loss may have been attributable to the wrongful act or misconduct of the shipowners or their servants, committed without the privity of the Assured.

"*Not To Inure Clause*

10. This insurance shall not inure to the benefit of the carrier or other bailee."

Subsequent to the March 9 report a second survey was undertaken by a John McDonald, representing the underwriters, with Mr. Brierly in attendance. This survey was taken on March 19, 1968, by which time the machines had been moved to a grass area alongside the road inside the dock area, in an open area unprotected from the elements. Between the time of these two surveys a proposal from the manufacturer of the machines, Myers-Sherman Co., of Streator, Illinois, for their repair was received by McDonald and one McCormack, representing the lessees. This proposal was for substantially less than the repair costs originally estimated. Mr. McDonald has stated that in his opinion the machines were not a constructive total loss, and that the actual loss ranged from $105,000 to $128,000. However, plaintiff contends that the Myers-Sherman proposal forming the basis of Mr. McDonald's opinion is deficient in various respects and that Myers-Sherman did not give a firm price for repair of the machines in accordance with the joint specifications of Messrs. Brierly and Bencal.

On April 18, 1968 a conference was held in New York with all interested parties represented, including plaintiff's president and counsel, Messrs. Brierly and McDonald, and counsel for the lessee's managing agent. Their differences were not resolved at that time, and on October 15, 1968 this action was commenced. Plaintiff Redna claims that under the policy it is entitled to payment of the full insured value of the machines, $170,000, plus expenses.

 Summary judgment may be granted only if there is no genuine dispute as to any material fact. It is not the Court's function to weigh the evidence or choose between factual inferences that may be drawn; where the papers submitted on the motion demonstrate a genuine dispute summary judgment must be denied. Empire Electronics Co. v. United States, 311 F.2d 175 (2d Cir. 1962). In this Circuit there is one line of cases indicating a reluctance to find material facts established beyond dispute before trial, Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); Dressler v. MV Sandpiper, 331 F.2d 130, 132 (2d Cir. 1964), but cf. Dyer v. McDougall, 201 F.2d 265 (2d Cir. 1952), and it has been held that there is a right to a trial where even the slightest doubt exists as to the facts. E.g., Rains v. Cascade Industries, Inc., 258 F.Supp. 974 (S.D.N.Y.1966). On the other hand, the 1963 amendments to Rule 56 strengthened the summary judgment device, so that conclusory allegations in the pleadings will not raise genuine disputes as to factual issues in the face of affidavits based on personal knowledge of the facts. Dressler v. MV Sandpiper, 331 F.2d 130 (2d Cir. 1964); Southern Ry. System v. Leyden Shipping Corp., 290 F.Supp. 742 (S.D.N.Y.1968). The same reasoning applies to conclusory statements made in affidavits, particularly those not based on personal knowledge submitted by counsel for the parties in the action. Wilson Jones Co. v. Gilbert & Bennett Mfg. Co., 332 F.2d 216 (2d Cir. 1964); Dressler v. MV Sandpiper, supra; United States v. Cates, 230 F.Supp. 273 (E.D.N.Y.1964). With these general principles in mind, the Court will consider the issues of fact which defendants contend are present in this case.

The first factual issue which defendants assert to be in dispute is whether or not the machines which arrived at Texas City in February 1968 are the machines covered by the policy. It will be recalled that when the insurance attached there were 11 machines on board the KOLL; they were transferred to the DOVREFJELL which sailed into Corpus Christi, and before the DOVREFJELL left that port in April 1967 at least two were replaced. Defendant underwriters contend that the policy covers only those machines which were not replacements put aboard at Corpus Christi. There is no contention that any machines were

substituted between the time the DOVREFJELL left Corpus Christi in April 1967 and the INTREPID arrived at Texas City in February 1968.

■■ Even if all 11 machines had been replaced at Corpus Christi, however, the policy, including endorsements, which must be construed in the manner most favorable to the insured, Trinidad Corp. v. American Steamship Owners Mutual Protection & Indemnity Assoc. Inc., 229 F.2d 57 (2d Cir.), cert. denied, 351 U.S. 966, 76 S.Ct. 1032, 100 L.Ed. 1486 (1956); C. H. Leavell & Co. v. Fireman's Fund Ins. Co., 372 F.2d 784 (9th Cir. 1967), demonstrates that as a matter of law the machines which left Corpus Christi in April 1967, and arrived in Texas City on the INTREPID were the ones covered by the policy. The insurance was arranged pursuant to the lease which commenced on April 24, 1967; Redna was the lessor and was so identified in the policy of insurance. The underwriter's endorsement of October 10, 1967, which is incorporated into the policy, further identifies the machines insured as those to be transferred from the DOVREFJELL to the INTREPID for return to the United States. Thus the policy attached to the machines which were aboard the vessel DOVREFJELL when it left Corpus Christi in April 1967, after the replacements were made, and it covered the voyage starting on that ship in Corpus Christi in April 1967, continuing on the vessel INTREPID after the transfer, and ending in Texas City on February 2, 1968 on the INTREPID. It is therefore this Court's conclusion that there can be no genuine dispute that the machines in suit were covered by the policy. Any allegations in defendants' answer seeking to raise this issue are therefore deemed stricken.

■■ Defendants also assert that it is not established beyond dispute that the machines were in good condition when they left Corpus Christi in April 1967. No proof is offered to contradict affidavits based on personal knowledge by Roy Goynes, who conducted an inspection prior to departure, and Jerry Kocian, an experienced mechanic and foreman not employed by Redna, who both state that the equipment was in good condition prior to departure. Defendants merely contend that these uncontroverted affidavits cannot demonstrate that there is no genuine dispute because they relate to facts solely within the knowledge of plaintiff. Such an argument would be persuasive if the issue was related to the state of mind of plaintiff; a mere affidavit, for example, by a party that he acted in good faith cannot establish grounds for summary judgment. Sentry Corp. v. Conal Int'l Corp., 164 F.Supp. 770 (S.D.N.Y.1958). In this case, however, the affidavits relate to a matter susceptible to objective ascertainment. One affidavit is submitted by a non-employee of Redna, Mr. Kocian, from whom an affidavit as to any additional facts could have been obtained by defendant. The conclusory statement of defendants' counsel that there is a genuine dispute as to the condition of the machines in April 1967 is not sufficient to raise such an issue.

■ Defendants next assert that there is a substantial question as to whether the damage which occurred was the result of a peril insured against by the policy. The policy in suit is an "all risks" policy. Such a policy provides coverage which insures against any loss without putting upon the insured the burden of establishing that the loss was due to a peril falling within the policy's coverage. Although there may be exceptions to such coverage, as for a defect inherent in the subject of the insurance, it is incumbent upon the underwriter to demonstrate that the expection applies. Jewelers Mutual Insurance Co. v. Balogh, 272 F.2d 889 (5th Cir. 1959); cf. Boston Ins. Co. v. Dehydrating Process Co., 204 F.2d 441 (1st Cir. 1953) (sink-

ing of vessel shown to be seaworthy presumed to result from "peril of sea").

 Defendants' primary contention that an issue exists with respect to coverage of the loss here is based upon the conclusion of the surveyor for the underwriters, McDonald, that the loss was not "fortuitous." It is true that as a matter of law insurance coverage, even under an all risk policy, extends only to fortuitous losses. Mellon v. Federal Ins. Co., 14 F.2d 997 (S.D.N.Y.1926). Whether or not a loss is fortuitous, however, is a legal question to be resolved by the Court, and the characterization of a loss as "fortuitous" is a legal conclusion to be distinguished from the facts upon which it is based. McDonald's statement in his survey report that he considered the loss not fortuitous is nothing more than a legal opinion, which would be insufficient, in the absence of a proper factual basis, to raise an issue as to whether the losses were covered by the policy. Turning to McDonald's factual findings, he found that the damage was caused by "neglect, poor maintenance, and excessive wear and tear." These findings do not support his legal conclusion that the loss was not fortuitous.

 It is well established that where negligence, even on the part of the employees of the insured, causes a loss, that loss is fortuitous and within the coverage of all risks insurance. C. H. Leavell & Co. v. Fireman's Fund Ins. Co., 372 F.2d 784 (9th Cir. 1967); New York, New Haven and Hartford R. R. Co. v. Gray, 240 F.2d 460 (2d Cir.), cert. denied, 353 U.S. 966, 77 S.Ct. 1050, 1 L.Ed.2d 915 (1957), rehearing denied, 354 U.S. 943, 77 S.Ct. 1397, 1 L.Ed.2d 1541 (1957); Associated Engineers, Inc. v. American Nat'l Fire Ins. Co., 175 F. Supp. 352 (N.D.Cal.1959). Furthermore, in this case there was an express provision in the policy that the fact that damage might be attributable to the "wrongful acts or misconduct of the shipowners or their servant" would not prejudice the assured's right of recovery; thus, by the very terms of the policy neglect or poor maintenance by the lessee who was in control and possession of the machines at the time the damage occurred would not bar plaintiff's recovery. Cf. Allen N. Spooner & Son, Inc. v. Connecticut Fire Ins. Co., 314 F.2d 753 (2d Cir.), cert. denied, 375 U.S. 819, 84 S.Ct. 56, 11 L.Ed.2d 54 (1963); Tropical Marine Products Co. v. Birmingham Fire Ins. Co. of Pennsylvania, 247 F.2d 116 (5th Cir.), cert. denied, 355 U.S. 903, 78 S.Ct. 331, 2 L.Ed.2d 260 (1957). The applicable law, therefore, forecloses defendants' contention that recovery was barred if the damage was the result of neglect or poor maintenance; furthermore, the wear and tear referred to in McDonald's report and affidavit, insofar as it was "excessive," would also be fortuitous in the legal sense, since it would not be attributable to the ordinary use of the machines.

 Defendants' counsel in his affidavit makes the contention, unsupported by any other proof, that the damage was due to inherent vice and therefore not covered by the all risks clause. While defendants again are invoking an established legal principle, Greene v. Cheetham, 293 F.2d 933 (2d Cir. 1961), its application to this case is completely unsupported. This defense applies to insured goods which are defective at the start of a voyage, such as the spoiled fish in *Greene*, and cannot therefore be said to have been injured as a result of any peril encountered during the voyage. The good condition of the machines here at the commencement of the voyage has been established by uncontroverted affidavits. Defendants' contention that the machines had an inherent vice in that they were not able to withstand exposure to the sea for such a long period is merely a reverse twist on the argument that prolonged exposure to the elements was evidence of neglect. The machines

were fit for the purpose intended, and, if they suffered from overexposure to the elements, the damage resulted from a risk for which coverage was purchased by payment of the insurance premium. Defendants' allegations of inherent vice are deemed stricken from their answer.

The next issue as to which defendants contend there is a bona fide dispute is the extent of the loss resulting from the damage which had occurred at the time the voyage ended. This issue involves two interrelated questions:

(1) Were the machines a constructive total loss when they arrived in Texas City?

(2) If not, did the plaintiff's conduct in leaving the machines in an open field constitute a failure to minimize losses as required by the policy and the common law doctrine of mitigation of damages?

Bearing on these issues is the fact that an offer was received from the manufacturer for repair of the machines for an amount from $90,000 to $40,000 less than the insured value ($170,000) of the machines. Plaintiff's president contends in an affidavit that the repair proposal was deficient; this, however, is only a contention, subject to proof at trial. It is disputed by the affidavit of McDonald, the underwriters' surveyor. If the machines were not a constructive total loss, the reasonableness of leaving them in the open field becomes a matter subject to genuine dispute. According to McDonald's affidavit there was agreement among the parties that the machines ought to be moved inside.

■ In view of the foregoing issues it cannot be said that plaintiff has established its right to recover the full insured value of the machines at this stage of the litigation. The extent of the loss attributable to damage suffered while the machines were on the voyage and, if a total constructive loss did not occur, the reasonableness of plaintiff's conduct upon their arrival, are issues as to which a trial is necessary.

■ Defendants raise a defense based upon the following provision of the policy:

"In the event of loss or damage which may result in a claim under this insurance, immediate notice should be given to the Lloyd's Agent at the port or place where the loss or damage is discovered in order that he may examine the goods and issue a survey report."

Notice was given upon discovery of the damage after the arrival of the INTREPID in Texas City. Defendants claim, however, that there were two prior occasions upon which they should have received notice. The first was at Madras, India in July 1967, at which time, according to information furnished to defendants, there was difficulty in the discharge of the DOVREFJELL and it was necessary to call in an engineer to get the machines running properly. Defendants nowhere contend, however, that Redna had knowledge of this difficulty in time to discover the damage and report it to the Lloyd's agent in Madras. Furthermore, on the second occasion on which defendants say they should have received notice, in Milford-Haven, England, in October 1967, plaintiff's agent Goynes was prevented from inspecting the machines and therefore had no opportunity to determine the nature and extent of the damage so that a report could be made to the underwriters' local agent. It therefore appears, and defendants do not controvert this, that plaintiff had no opportunity to ascertain and inspect the damage until the INTREPID arrived at Texas City and was discharged. It is, furthermore, not disputed that Redna was unable to obtain a copy of the insurance policy until April 1968 and therefore had no actual knowledge of this provision of the policy.

The Court concludes that there is no basis for the defense of failure to give notice and that it should be deemed stricken from defendants' answer.

■ Plaintiff apparently seeks summary judgment on its second claim as well as on its first. There is, however, nothing in the moving papers to indicate that it is established beyond controvention that F. B. Hall & Company wilfully and wrongfully withheld the details of the insurance from plaintiff or that plaintiff suffered any damages as a result of such withholding. An affidavit of John D. Lucey, a vice-president of defendant Hall, who has personal knowledge of the relevant transactions and events, sharply disputes any wrongful conduct on the part of the broker. This affidavit is sufficient to raise a genuine dispute as to material issues of fact relating to the second claim.

Plaintiff's motion for summary judgment is denied. As heretofore indicated, however, the Court finds that there is no genuine dispute or substantial controversy as to the following facts and that pursuant to Rule 56(d) they may be deemed established for purposes upon trial of the action:

(1) The 11 machines which are the subject of this action are covered by the policy upon which suit was brought.

(2) The machines were in good condition on board the DOVREFJELL at the time of its departure from the United States in April 1967.

(3) The damage to the machines which occurred before the arrival of the INTREPID at Texas City in February 1968 was the result of a risk covered by the insurance policy.

(4) The damage was not the result of inherent vice or the nature of the subject matter.

(5) Plaintiff did not breach its duty to notify the underwriters of damage.

It is so ordered.