**ATLANTIC LINES LIMITED, Plaintiff,**

**v.**

**AMERICAN MOTORISTS INSURANCE COMPANY, Defendant.**

**74 Civ. 2544.**

United States District Court, S. D. New York.

Feb. 3, 1976.

Hill, Betts & Nash, New York City, for plaintiff; Edwin Longcope, John P. Love, New York City, of counsel.

Dougherty, Ryan, Mahoney, Pellegrino & Giuffra, New York City, for defendant; Robert J. Giuffra, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

This suit arises from a dispute regarding the scope of coverage and burden of proof under an insurance policy issued by American Motorists Insurance Company (American Motorists) to Atlantic Lines, Ltd. (Atlantic).

Beginning in April, 1971, Atlantic Lines leased approximately 700 pieces of equipment including chassis and containers to use on board two vessels which Atlantic operated as a liner service between New York and various ports. When Atlantic terminated the service in the fall of 1972, it discovered that cer-tain of the leased chassis and containers were missing from its inventory. Although some of the lost equipment has been recovered, one chassis which was found was damaged and repaired at Atlantic's expense. Two containers and six chassis have not been found. Atlantic admits its complete ignorance as to the cause of the equipment's disappearance or its present whereabouts. American Motorists disclaims liability for the six items and the repair cost of the chassis, asserting that there is no coverage under the policy for lost equipment and that, in any event, Atlantic. Lines has not met its burden of establishing that the equipment is no longer in existence or within its inventory. In lieu of presenting oral testimony, the parties submitted a stipulation of agreed facts and the deposition of R. Ross Camardella, General Manager in Charge, Container Division, Atlantic Lines. The parties specifically declined to present testimony as to the interpretation given the contract by the custom of the trade.

### I. Scope of Coverage

Both parties agree that the policy in issue was in effect at the time the alleged losses occurred. (Order and Stipulation of Agreed Facts, ¶ 2) It provides in part:

. "Coverage—

To pay for physical loss or damage to the property insured . . . from any external cause except as excluded below." (Clause 7.A of addendum to policy dated September 22, 1971)

There is no contention that any of the specific exemptions apply in the present case. American Motorists' position is simply that the clause quoted above does not include coverage for theft, mysterious disappearance of the equipment, or inventory loss. The insurance company interprets the phrase "physical loss or damage to the property" to mean that coverage is provided only for damage *to* the equipment, not loss *of* the property.

This exceedingly narrow reading is not entirely persuasive as a matter of gram-

matical analysis. In any event, it is at odds with the wording of other provisions in the same contract. For example, immediately following the basic coverage section, the policy contains two sections under the heading "Exclusions" which read in part:

"This insurance also covers damage, theft . . . or destruction of the property insured [and] destruction of or damage to the property directly caused by persons acting maliciously." (Ex. A to Order and Stipulation of Agreed Facts, ¶ 9)

\*   \*   \*   \*   \*   \*

"[I]n case of any loss or misfortune . . . no acts of the Assurers or of the Assured in recovering, saving or preserving the property insured shall be considered as a waiver or acceptance of abandonment." (¶ 11)

These sections, as well as others, specifically contemplate coverage in the event of theft or "any loss," and do not limit recovery to instances in which the property is only damaged. Although other provisions in the contract specifically state that their terms are enforceable "notwithstanding anything herein to the contrary,"—or enforceable despite their inconsistency with other contract provisions, including the coverage clause—the coverage for theft and "any loss" does not include such language.[1] It is reasonable to assume, therefore, that those particular provisions are *not* contrary to the general coverage provision and that the coverage for "physical loss or damage" does contemplate coverage for loss as well as damage.

The parties have pointed to no cases which deal with this particular issue and we have found none. However, the contract clause in dispute is termed an "all risks clause" and creates a policy:

"[in which] the insured event is defined in terms of loss of or injury to the thing insured. Such policies are used to cover risks of events too heterogeneous for exhaustive definition." Patterson, Essentials of Insurance Law 239 (1957).

An all-risks policy has been defined by courts as providing coverage against any loss which is fortuitous, even if caused by the negligence of the insured or its employees. *Redna Marine Corporation v. Poland,* 46 F.R.D. 81, 87 (S.D.N.Y. 1969). To interpret the phrase as American Motorists suggests would unduly restrict a policy provision that has been given consistently broad reading by treatises and courts. See, e. g., *Northwestern Mutual Life Ins. Co. v. Linard,* 498 F.2d 556, 561 (2d Cir. 1974) and authorities cited therein.

## II. Burden of Proof

American Motorists argues that in any event Atlantic has not met its burden of establishing that a fortuitous loss occurred. Atlantic claims that its burden has been discharged by showing that it no longer has control of or knowledge as to the location of the equipment.

■ The burden of proof is normally on the insured to demonstrate that a loss arose from a covered peril. *Northwestern Mutual Life Insurance Co. v. Linard, supra,* 498 F.2d at 561; *S. Felicione & Sons Fish Co. v. Citizens Casualty Co.,* 430 F.2d 136, 138 (5th Cir. 1970), *cert. denied,* 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971). However, in the case of an all risks policy, the insured need only demonstrate that a loss occurred and that it resulted from a fortuitous event. The underwriter must then demonstrate that an exception to coverage under an exclusionary clause in the contract applies. *Redna Marine Corp. v. Poland, supra.*

---

1. For example, paragraph 8B(1) of the contract provides:

"Notwithstanding anything herein contained to the contrary, this insurance is warranted free from capture, seizure, arrest . . . ."

Paragraph 8B(2) contains the proviso that:

"Nothing in these clauses shall be construed to include or cover any loss . . . resulting from:

(a) change in temperature or humidity . . . ."

Atlantic's claim that the equipment is lost is persuasive despite American Motorists' suggestion that it may still be in existence. Webster's Dictionary defines "lost" as including the meanings: "no longer visible," "ruined or destroyed," and "taken away or beyond reach or attainment." It is much less clear, however, that Atlantic has met its burden of proving that the loss was fortuitous.

During the time that the liner service was in operation, Atlantic Lines maintained a system to account for the location of all leased containers and chassis. These records have been destroyed, and it is therefore impossible to establish the date the equipment was lost, its last recorded location, or any facts which might afford some clue as to the cause of its disappearance.

■ Where the evidence that a loss is covered by the policy is equal to the evidence that there is no coverage, the insured's claim fails. *Northwestern Mutual Life Insurance Co. v. Linard, supra,* 498 F.2d at 562. A party normally demonstrates that a loss was fortuitous by proving the cause of its absence. In the present case, there is no evidence at all on this subject.

Atlantic argues that the *probability* that the losses were fortuitous is greater than not and that the insurance company is therefore bound to reimburse it under the contract. To support this contention, Atlantic points to the history of the equipment which was originally lost but subsequently recovered. Two containers were found in an open terminal in Florida. Atlantic had misplaced them and thereafter found that a carrier, not operated by it, had inadvertently picked them up. (Deposition of R. Ross Camardella, at p. 88). Another chassis was found in a vacant lot in Brooklyn, stripped of its valuable parts. (Order and Stipulation of Additional Facts, ¶ 2) If Atlantic's negligence caused the disappearance of the equipment which is still lost, as was true of the containers, the insurance company would be liable, for such a loss is considered fortuitous and within the coverage of an all risks insur-

ance clause. *C. H. Leavell & Co. v. Fireman's Fund Ins. Co.,* 372 F.2d 784 (9th Cir. 1974); *New York, New Haven & Hartford R.R. Co. v. Gray,* 240 F.2d 460 (2d Cir.), *cert. denied,* 353 U.S. 966, 77 S.Ct. 1050, 1 L.Ed.2d 915, *rehearing denied,* 354 U.S. 943, 77 S.Ct. 1397, 1 L.Ed.2d 1541 (1957); *Redna Marine Corp. v. Poland, supra.* Moreover, if the losses at issue resulted from theft within the United States, as in the case of the stripped chassis, American Motorists would also be liable as a result of the contract itself which provides:

"While the property insured is at risk under the terms and conditions of this insurance *within the United States of America, the Commonwealth of Puerto Rico, the Canal Zone, the Virgin Islands, and Canada,* this insurance is extended to cover damage, theft, pilferage, breakage or destruction of the containers insured directly caused by 'Vandalism' ". (¶ 9) (emphasis in original)

■■ To rely as Atlantic suggests on the known fate of some of the equipment as evidence of the probable fate of other containers and chassis would be to engage in mere speculation. Such conjecture in and of itself cannot carry the burden of establishing that the loss is covered. See *Northwestern Mutual Life Insurance Co. v. Linard, supra,* 498 F.2d at 558, 562. Thus, we are left as at the start with a balance of proof—or lack of proof. The scales being equal, Atlantic's claim must fail.

It is true that the burden of proof is as a matter of law cast on the insured "basically because [it] has more information more readily available," (*Northwestern Mutual, supra,* 498 F.2d at 562) and that here Atlantic knows nothing more than American Motorists does. Nevertheless the lack of knowledge can hardly be charged against the insurer; it is reasonable that that much of the risk of loss should be borne by the insured.

For the reasons stated above, the complaint is dismissed.

It is so ordered.