**COMPAGNIE DES BAUXITES DE GUINEE, a corporation, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, the Insurance Corporation of Ireland Ltd., Eagle Star Insurance Co., Ltd., Hanover Insurance Company, Continental Assurance Company of London Ltd., the Century Insurance Co., Ltd., Yuval, the Insurance Company of Israel, Ltd., Home Insurance Co., Ltd., Slater, Walker Insurance Co. Ltd., Yasuda Fire & Marine Insurance Co. (UK) Ltd., Nichido Fire & Marine Insurance Co., Ltd., Turegum Insurance Company, Sahar Insurance Co., Ltd., Excess Insurance Co., Ltd., Trident Insurance Co., Ltd., Stronghold Insurance Co., Ltd., British Reserve Insurance Co., Ltd., English & American Insurance Co., Ltd., and Consolidated European Reinsurance Co., Ltd., all being corporations, Defendants.**

Civ. A. No. 75-1567.

United States District Court,
W.D. Pennsylvania,
Civil Division.

Jan. 19, 1983.

Cloyd Mellott, Robert Doty, Andrew Roman, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for plaintiff.

Randall J. McConnell, Jr., Stephen R. Mlinac, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for Insurance Co. of North America.

Thomas F. Weis, David Beck, Weis & Weis, Pittsburgh, Pa., for excess insurers.

### OPINION

SIMMONS, District Judge.

Plaintiff Compagnie des Bauxites de Guinee ("CBG"), instituted this diversity action against the Insurance Company of North

America ("INA") and numerous Excess Insurers under business interruption provisions of an all risk policy of insurance, to recover business interruption losses allegedly sustained as the result of the structural failure and collapse of a tippler building and crusherhouse ("tippler/crusher").

Plaintiff CBG purchased from Defendant INA business interruption insurance under an all risk policy of insurance which provided primary coverage in the amount of $10,-000,000.00. CBG also purchased from the remaining defendants excess insurance coverage in the amount of $10,000,000.00. Plaintiff CBG is claiming losses in the instant case in excess of $22,000,000.00, hence the involvement of these Excess Insurers.

Plaintiff CBG is engaged in the mining, processing, selling and shipping of bauxite ore, (which is used in the production of aluminum), in the Boke Region, Republic of Guinea, West Africa. The tippler/crusher involved herein is located at CBG's processing and shiploading facilities at the port of Kamsar in the Republic of Guinea.

Bauxite ore which is mined and blasted at Sangaredi is trammed 135 kilometers to the port of Kamsar, where the raw ore is tippled and received at a crushing plant, consisting of two crushing lines, which crushes the bauxite ore into smaller pieces, so that it can be further processed and ultimately shipped.

When the ore cars arrive at the crushing plant in Kamsar, each car is raised approximately 42 feet, at which point the ore is "tippled" so that the blasted ore is emptied into the hopper of the crushing plant. The blasted ore then falls to the bottom of the hopper, which is a moving conveyor system known as an "apron feeder," consisting of a series of pans which move the ore to a moving screen, known as the "wobbler" which separates the large ore pieces from the smaller ore pieces. The larger pieces are then conveyed to the crusher where "hammers" crush the ore into smaller pieces which are then transported to various other locations at the Kamsar facility.

The tippler/crusher operation suffered continual problems, and in August and September 1974, suffered such serious structural failure, collapse, and deformation of its support beams that it had to be rebuilt, which reconstruction was accomplished in June or July 1975. Plaintiff CBG claims business interruption losses for the period of September 1974 through September 1975.

Defendants INA and the Excess Insurers have moved for Summary Judgment, contending firstly that Plaintiff CBG failed to comply with the provisions of the policy of insurance which require immediate written notice of any loss, thereby causing severe prejudice to Defendants, who were denied the opportunity to inspect and examine the tippler/crusher prior to its rebuilding, secondly, that suit was not brought within twelve months of the inception of the loss as required by the contract of insurance, which also severely prejudiced Defendants; and finally, that the failure and collapse of the tippler and the crusherhouse cannot, as a matter of law, constitute the sudden fortuitous and accidental event which is required before coverage can attach under the terms and conditions of said contract of insurance.

In the light of the undisputed facts, the Motions of Defendants INA and the Excess Insurers for Summary Judgment will be granted on the ground that a fortuitous event has not occurred, based on the reasoning set forth hereinbelow in this Opinion.

## II.

As a matter of law, insurance coverage, even under an all risk policy of insurance, extends only to fortuitous losses, or losses caused by a fortuitous event. *Dow Chemical Co. v. Royal Indemnity Co.,* 635 F.2d 379 (5th Cir.1981); *Atlantic Lines Limited v. American Insurance Co.,* 547 F.2d 11 (2d Cir.1976). The determination of whether a loss is fortuitous is a legal question for the court to determine. *Redna Marine Corporation v. Poland,* 46 F.R.D. 81 (S.D.N.Y. 1969). This requirement of a "fortuitous" event has been utilized by the courts as a fundamental principle of law in interpreting insurance contracts, and is not a new or

novel concept. *See* G. Couch, *Couch on Insurance* 2d § 48:141 (1951).

A fortuitous event is an event which is dependent on chance, and is synonymous with the term "accident." Although an insurer is obligated under an all risk policy of insurance to pay for losses which are caused by a fortuitous and extraneous event, an insurer is not obligated to pay for loss which is likely or certain to happen, due to the nature and inherent deficient qualities of the property insured. For example, damage which is inevitable or due to wear and tear is not covered by all risk policies, since there is no "risk" involved because such damage or loss is certain to occur. *Avis v. Hartford Fire Insurance Co.,* 195 S.E.2d 545, 547, 283 N.C. 142 (1973). As stated previously, "all risk" policies of insurance cover only those damages or losses which are due to a fortuitous circumstance or casualty.

As indicated above, in order that a loss be covered under a policy of insurance, such as the one at issue, the loss must result from a risk, and not from the probable consequence of the inherent deficient qualities of the item insured. Although coverage under an "all risk" policy of insurance is broad, the term "all risk" does not mean that "all losses" are covered, it is only those losses that are of a fortuitous nature or which are caused by a fortuitous event which are covered. *Avis v. Hartford Fire Insurance Co.,* 192 S.E.2d 593, 16 N.C.App. 588 (1972); on appeal, 195 S.E.2d 545, 283 N.C. 142 (1973).

"Fortuitous" means happening by chance or accident, occurring unexpectedly or without known cause; accidental and undesigned. *Black's Law Dictionary* (Rev. 4th Ed.1968). The damage or loss must therefore result from an extraneous cause, and not wholly from an inherent defect in the subject matter or from the inherent deficient qualities, nature, and properties of the subject matter insured. *Greene v. Cheetham,* 293 F.2d 933 (2d Cir.1961); *Mellon v. Federal Insurance Co.,* 14 F.2d 997 (S.D.N.Y.1926) (A.Hand, J.).

It is important to note that in the instant case, Defendants are not denying coverage on the basis of a specific exclusionary term of the contract of insurance; rather, they are claiming that the failure and collapse of the tippler/crusher was not caused by a fortuitous event of any kind or by chance, and that the interim and final failure and collapse of the tippler/crusher was thus inevitable, expected, and certain to occur from the very moment of its completed construction.

### III.

Specific exclusions to a policy of insurance, even in an all risk policy of insurance, are normally a matter of contract between the parties. However, regardless of the contractual agreement of the parties, the Courts have recognized that it is contrary to public policy to permit insurance coverage for a non-fortuitous event, and to do so, would encourage fraud, deception and collusion. "It must always be borne in mind that the policies are of *insurance* and not of warranty of soundness.... [T]he perils insured against are risks." *Mellon v. Federal Insurance Co.,* 14 F.2d 997 (S.D.N.Y. 1926).

It is undisputed in the instant case that the structural collapse and deformation of the beams of the tippler/crusher building occurred because that structure was improperly designed to withstand the heavy loads and severe vibration that said structure would necessarily be subjected to. Plaintiff's own expert report indicates that the facility was defectively designed, because the design of the structure was erroneously based on the incorrect estimate of the specific gravity of the bauxite ore to be crushed. The use of the incorrect weight of the bauxite ore in designing said structure was admitted by counsel for Plaintiff CBG:

But as I understand it, bauxite has a certain specific weight per cubic foot of about a hundred pounds in its crushed state, but in its uncrushed state, which is the state in which it is introduced into the crusher building, it has a specific weight of 159 pounds per cubic foot; and some

time in October of 1974, after the failure had been discovered, we learned from the people who had designed the tippler building that they had assumed a weight of only a hundred pounds per cubic foot rather than the 159 that they should have used.

Transcript, November 18, 1982 at 34–35. This admission of design error is essentially in agreement with the Plaintiff's expert report of O'Donnell Associates attached to Plaintiff's Pretrial Statement. Whether the design error was inadvertent or planned is of no consequence here, since the collapse of the structure was inevitable (from the time of its design and prior to the issuance of the policy of insurance involved here), due to the inherently deficient design of that structure which made it impossible for said structure to withstand the heavy loads and severe vibration that it would be most certainly subjected to.

In the light of the defective design of the tippler/crusher, it was inevitable that it would not be able to withstand the stresses to which it was certain to be subjected and it was thus inevitable and certain that prior to the inception of the policy of insurance that there would be a business interruption. Such a loss cannot be accidental or fortuitous, for it was predictable and certain that a defectively designed building such as the one involved here would fail and collapse when subjected to forces in excess of those erroneously calculated. The collapse is an expected result of the design defect, and whether or not the design defect is inadvertently caused, the collapse is certain to happen. Under the circumstances herein, the concept of risk that is inherent in all policies of insurance is lacking. "[T]here must be a fortuitous event—a casualty—to give rise to any liability for insurance." *Mellon v. Federal Insurance Co., supra* at 1004. It is not by accident or by chance that the tippler/crusher collapsed, and collapse was the inevitable and expected result of the design errors which were incorporated into the tippler/crusher.

■ The law is quite clear that an insurer is not liable for losses resulting from inherent vice, defect or infirmity in the subject matter insured, for this type of loss is not caused by chance or an extraneous event. *Aetna Insurance Co. v. Sachs,* 186 F.Supp. 105, 108 (E.D.Mo.1960). A non-fortuitous loss due to an inherent vice, defect or infirmity, is not covered by a contract of insurance, regardless as to the bargained-for exclusionary terms of the policy. Public policy requires that this be so, for insurance policies are designed to cover risks, and implicit in the concept of risk is chance and uncertainty. If it is inevitable that there will be a loss, whether by the insured's own misconduct or by the inherent nature and qualities of the object of the insurance, it is against public policy to insure against that inevitable loss.

■ It is uncontested by the parties that the concept of a fortuitous event is a court imposed requirement of the law pertaining to contracts of insurance, and this Court has established the validity of this proposition earlier in this Opinion. Further, Plaintiff's own expert contends that the tippler/crusher was defectively designed *ab initio* and that it could not possibly have functioned in the manner intended as the result of the defective design. It is further uncontested that the tippler/crusher suffered structural failure and deformation of support beams, as a result of the inherent defects in its design. It is clearly apparent that the collapse of the structure was bound to, and did occur, not as the result of accident, chance, or an extraneous event, but as a result of the inherent qualities and defects of the subject matter. There was no question but that the tippler/crusher which was defectively designed prior to the issuance of this policy of insurance, would fail or collapse. Thus there could be no fortuitous event triggering coverage under the policy of insurance.

The situation presented in the instant case is distinguishable from the factual situation presented in *Texas Eastern Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561 (10th Cir.1978). That case involved the construction and collapse of an underground storage cavern designed to

hold liquified petroleum gas. There the court stated, 579 F.2d at 565: "When past experience indicated that this particular design would be satisfactory, and it was not for some reason which is uncertain, a *fortuitous* event occurred within the loss provisions of the contract, not excluded by the 'deficiency in design' clause." (Emphasis added).

In the instant case, unlike the underground storage caverns, the tippler/crusher was designed inadequately from its inception, and the reason for the misdesign is certain and known, that is, according to Plaintiff's own experts, the use of incorrect estimates of the weight of the bauxite ore in its uncrushed state, the oversized boulders, and use of incorrect stress formulae. Unlike the caverns in *Texas Eastern* which were satisfactorily designed, this tippler/crusher was defectively designed and its failure was certain from the very beginning of its operation. Thus a fortuitous event like the one giving rise to coverage under the policy in *Texas Eastern* never occurred here. The Plaintiff in *Texas Eastern* presented the evidence of several experts who testified that the cavern in question was similar to previously constructed caverns which were satisfactorily completed and that the cavern which collapsed was a good cavern shortly before the collapse, and was one which should not have collapsed. This is certainly not the situation here, where the Plaintiff's own expert admits that the tippler/crusher was defectively designed prior to its construction. Here the event itself, that is, the collapse and structural failure of the tippler/crusher was inevitable, and hence, cannot be said to be fortuitous.

### IV.

To allow coverage for a design defect such as the one involved here and to define such a failure due to a design defect as being "fortuitous" is certainly contrary to public policy, would permit coverage where no risk exists and would be an open invitation to fraud and collusion. An all risk policy of insurance covers "something which happens to the subject-matter from without, not the natural behavior of that subject-matter." *Mellon Federal Insurance Co., supra* at 1002. The Defendants never undertook to guarantee that the tippler/crusher was free of design defects, and it was never within the contemplation of the parties that Defendant INA and/or the Excess Insurers would act as an absolute warrantor of the design and construction of the tippler/crusher, especially when the policy of insurance involved herein took effect after the facility was designed and constructed. To hold that there is coverage within the insurance contract under the undisputed facts as presented here, where there has not been the occurrence of a sudden, unexpected and fortuitous event, would be to eliminate all concepts of risk taking inherent in insurance policies. Such a situation was certainly not in the contemplation of the parties at the time of the making of the contract of insurance, and public policy will not permit a policy of insurance to cover the situation where a loss is certain, expected and inevitable prior to the inception of said policy.

Additionally, it appears to this Court that on the undisputed facts of this case, that a proper cause of action would lie against the designer and/or constructor of the tippler/crusher, and not against Defendants INA and the Excess Insurers under the terms of this business interruption policy.

For the reasons previously discussed in this Opinion, the Motion of Defendant INA and the Excess Insurers for Summary Judgment will be granted on the grounds that there was no fortuitous event occurring at the time alleged in the pleading which would trigger coverage under the policy of insurance.

The Court is not unmindful of the additional issues raised by Defendants INA and the Excess Insurers, namely, that Plaintiff CBG failed to give timely notice of the loss which prejudiced Defendants, and that the suit was not instituted within twelve (12) months after the inception of the loss as required by the policy of insurance. However, the Court believes that these issues

involve disputed questions of fact. Further, the resolution of these above-mentioned issues is immaterial and effectively mooted in light of the hereinabove written Opinion.

An appropriate Order will be entered.

## ORDER

AND NOW, this 18th day of JANUARY, 1983, after hearing, argument, consideration of the briefs, and for the reasons set forth in the accompanying Opinion, IT IS ORDERED that the Motion of Defendant INA and the Motion of the Excess Insurers for Summary Judgment be and the same is hereby GRANTED, and the above-captioned case is ORDERED DISMISSED with prejudice.