ARTHUR E. BOYD AND WIFE, MARY M. BOYD, v. BANKERS & SHIPPERS
INSURANCE COMPANY.

(Filed 27 February, 1957.)

**1. Insurance § 25a—**

A provision in a fire insurance policy, written in accordance with the
standard form prescribed by statute, that action on the policy must be com-
menced within twelve months next after inception of the loss is a valid
contractual limitation and not a statute of limitation, and is binding upon
and enforceable between the parties. G.S. 58-176.

**2. Same—**

The provision in the standard form of a fire insurance policy that suit
must be commenced within twelve months next after inception of the loss
is made a conjunctive limitation by the 1945 Act, so that compliance with
this requirement is necessary in addition to compliance with the other
statutory conditions of the policy. Sec. 14, Chapter 378, Session Laws of
1945.

**3. Same—**

Revisal 4809 (G.S. 58-31) was repealed by Chapter 378, Session Laws of
1945 (G.S. 58-176) in so far as the former act is in conflict with the con-
tractual limitation in a standard form of a fire insurance policy that suit
on the policy be instituted within one year of the inception of loss.

**4. Insurance § 24a—**

Under the terms of the standard fire insurance policy in effect in this
State, no action may be maintained on a policy unless proof of loss shall
be filed within the prescribed period.

503

**5. Insurance § 25a—**

In an action upon a policy of fire insurance in the standard form, judgment of nonsuit is proper when the record discloses that more than twelve months elapsed between the inception of the loss and the commencement of the suit.

PARKER, J., dissents.

APPEAL by plaintiffs from *Sink, E. J.,* at July 1956 Civil Term of SURRY as No. 673 at Fall Term, 1956, and brought forward to Spring Term, 1957.

Civil action to recover on policy of insurance on dwelling house against loss by fire.

Plaintiffs, Arthur E. Boyd and wife, Mary M. Boyd, in their complaint, as amended, allege substantially the following:

I. That on or about 6 November, 1953, defendant, a New York corporation, authorized to engage in the business of insuring property against loss by fire, issued a policy of insurance upon a one-story frame dwelling owned by plaintiffs, situated in Bryan Township, Surry County, North Carolina, against loss by fire within three years thereafter, not exceeding $3,500.00, with loss, as provided by rider in said policy, by reason of mortgage indebtedness owed by plaintiff, payable to Workmen's Federal Savings & Loan Association of Mt. Airy, N. C., as its interest might appear.

II. That on 26 November, 1953, the said dwelling house, described above, was damaged and destroyed by fire, and rendered worthless causing a direct loss and damage to plaintiffs in excess of $3,500.00 by reason of which, and under the said policy of insurance, defendant is indebted to plaintiffs in the sum of $3,500.00.

III. That plaintiffs and Workmen's Federal Savings & Loan Association immediately gave notice of said loss and damage, but defendant, through its agent, refused to make any settlement until Workmen's Federal Savings & Loan Association sold the land upon which the house was situated, under its mortgage, which was done,—the same bringing at such sale $2,478.65, that is, $255.20 in excess of the mortgage debt; and that thereafter plaintiffs immediately gave defendant written notice of the sale, and again demanded settlement, but that defendant immediately denied liability or responsibility for any part of said loss, thereby waiving further proof of loss.

IV. That, as set forth in amendment to complaint, defendant, by returning to plaintiffs the proof of loss, so furnished by plaintiffs, and. by continuing negotiations toward reaching a settlement of plaintiffs' claim, with plaintiffs or their agents, defendant waived the provisions of said policy regarding proof of loss and regarding the time within which suit shall be brought (on said policy), and estopped itself from

objecting to the contents of the proof of loss, or from taking advantage of the time within which suit was brought.

Defendant, answering the complaint of plaintiffs, admits (1) that a policy of insurance was issued in favor of plaintiffs; that the policy contained a rider to the effect that, by reason of mortgage indebtedness from plaintiff, loss clause was made payable to Workmen's Federal Savings & Loan Association as its interest might appear; (2) that the dwelling house of plaintiff was destroyed by fire; (3) that verbal notice of a loss under the policy was given to defendant; (4) that it is advised that a foreclosure sale of premises owned by plaintiffs was had at request of Workmen's Federal Savings & Loan Association, and (5) that defendant received a letter from J. N. Freeman, attorney for plaintiffs, under date 5 November, stating that Workmen's Federal Savings & Loan Association informed him "that they have satisfied their mortgage by selling the land in the deed of trust." But defendant denies all other allegations of the complaint and of the amendment thereto.

And by way of further answer and defense, defendant avers in substance:

1. That the policy of insurance issued by it in favor of plaintiffs contained following provisions: ". . . and within sixty days after the loss, unless such time is extended in writing by this company insurer shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: . . . the interest of the insured and of all others in the property . . . all encumbrances thereon . . .," (Here is set forth verbatim provisions of Standard Fire Policy with respect to requirements as to proof of loss in case loss occurs—G.S. 58-176).

2. That subsequent to the fire loss suffered by plaintiffs, it, the defendant, furnished to plaintiffs, to their attorney, Mr. J. N. Freeman, Mt. Airy, North Carolina, and to the Workmen's Federal Savings & Loan Association, Mt. Airy, North Carolina, form of proof of loss for use by plaintiffs.

3. That plaintiffs, at all times prior to the institution of this action failed and refused to execute and furnish to defendant a proof of loss, as was required by the policy, and as appears in paragraph 1 of this further answer and defense.

4. That at the time of the alleged loss by fire suffered by plaintiffs, there were two unsatisfied deeds of trust on record in the office of Register of Deeds of Surry County against the premises in question—one in favor of Workmen's Federal Savings & Loan Association, as alleged by plaintiffs, and the second in favor of Albert J. Stanley and wife, Jane Stanley.

5. That plaintiffs refused to execute due proof of loss as was required by the policy because they did not consent to the inclusion in the proof

of loss reference to the second deed of trust; and that defendant contends that under the terms of the policy hereinbefore recited it was necessary that the interest of the insured "and of all others in the property" must necessarily have been shown in the proof of loss; and that this was material and defendant has a right under the policy to insist upon full compliance therewith, with respect to the filing of proof of loss by plaintiffs.

And by way of second further answer and defense: Defendant, without abandoning any of the matters hereinabove set forth, avers that the action of plaintiffs was instituted more than twelve months after the inception of the loss; and that in this connection defendant pleads that the policy purchased and held by plaintiff had the following provision therein: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

And the evidence offered upon the trial and elicited from plaintiff Arthur Boyd, and witnesses for him, as shown in case on appeal tends to show this factual background:

(1) That Ray Riggs and his wife, Lena H. Riggs, acquired the property here involved from Oliver J. Stanley and wife; that Ray Riggs and his wife, on 25 November, 1949, conveyed the property to Arthur E. Boyd and his wife, the plaintiffs in this action; that in the meantime Ray Riggs and his wife executed two deeds of trust; the first to A. B. Carter and Fred Folger, Trustees, for benefit of Workmen's Federal Savings & Loan Association of Mt. Airy, dated June 4, 1947, recorded in Book 169 at page 14 in office of Register of Deeds of Surry County, securing a loan of $3,000.00; and the second to R. Louis Alexander, Trustee, for benefit of Oliver J. Stanley, dated seven days later than the first, to wit, June 11, 1947, and recorded in the same Book 169 as the first, at page 19 in office of Register of Deeds of Surry County, to secure an indebtedness in amount of $1,000.00; that both deeds of trust appeared of record as uncancelled on the date of the fire which destroyed the dwelling house covered by the insurance policy, to wit, 26 November, 1953.

(2) That as to the first deed of trust above described, when the Boyds purchased from Riggs, they assumed the indebtedness secured thereby, and, as admitted in the pleadings, the insurance policy was endorsed with loss-payable clause in favor of the Workmen's Federal Savings & Loan Association as its interest might appear. But as to the second deed of trust, Arthur Boyd disclaimed any knowledge of it, at the time he purchased, though it was of record and uncancelled and

only seven days junior to the deed of trust for benefit of Savings & Loan Association.

Plaintiffs offered in evidence the insurance policy and endorsement thereon, and the record shows that "counsel for plaintiffs and counsel for the defendant stipulate and agree that the fire insurance policy which is the subject of this case on appeal is in form the standard fire policy as is set forth in G.S. 58-176(3) as appears in Vol. 2B of the General Statutes of North Carolina at page 367, and on the four preceding pages, and by consent the policy is not copied in the record on appeal." The basic amount of the policy was $2,400.00 on the dwelling,—later, before the fire, it was increased to $3,500.00.

The evidence also tends to show that after the fire occurred the land was sold under foreclosure of the first deed of trust, after several raised bids, for $2,478.65, which was $255.20 over and above the amount of the indebtedness due on the loan; and that thereafter, to wit, on 3 November, 1954, attorney for the Building & Loan Association turned over the policy of insurance to attorney for plaintiff,—advising him that the debt of the association had been satisfied.

The evidence also tends to show that the defendant, upon receiving notice of the fire, prepared, through its representative, and left form of proof of loss with attorney for the Building & Loan Association for Mr. Boyd to sign; and that he did not sign it.

And the record of case on appeal discloses that Mr. Carter, attorney for the Savings & Loan Association, referring to insurance company representative, testified: "They never did deny the claim so far as I know," and again "They didn't deny the claim." Plaintiff Arthur Boyd testified: "After the house burned the first conversation I had with the insurance company agent was next afternoon, the 27th of November, 1953; I reported it to Mr. Royall's office . . . and Mr. Hinnant . . . contacted me. . . . If he questioned the loss in any way, I didn't know anything about it . . ."

The case on appeal shows that Arthur Boyd testified: "I only saw one proof of loss furnished by the company which included the names of me and my wife, A. B. Carter, Fred Folger, Trustees, Workmen's Federal Savings & Loan Association, Mr. Louis Alexander, and Mr. and Mrs. Stanley. . . I was told that a proof of loss was left for me at the Building & Loan Association, but I wasn't interested in it like that. So far as the name of Mr. Louis Alexander, Trustee, and Mr. and Mrs. Stanley's names appeared on it, I was not going to sign it. I never did sign a proof of loss. Mr. Hinnant (representative of Insurance Company) said that I would have to file a proof of loss before any payment could be made, he said he couldn't pay anything until that had been done." And plaintiff Boyd later continued by saying: "Mr. Freeman was my agent in this matter from the early part of 1954 on up to the

present in connection with this loss. I had continuous representation and I knew the policy was at the Building & Loan Association . . ." And again he identified the original summons in this action as being dated "27th day of November, 1954."

At the conclusion of plaintiff's evidence, defendant moved for judgment as of nonsuit on two grounds: (1) That plaintiffs have not filed proof of loss as required in the policy, and (2) that the action was not instituted within one year as required by the policy.

The motion was allowed upon both grounds and order was entered in accordance therewith, dismissing the action.

Plaintiffs excepted thereto, and appealed therefrom to Supreme Court and assign error.

*Frank Freeman for Plaintiffs Appellants.*
*Wilson Barber for Defendant Appellee.*

WINBORNE, C. J. Is there error in the ruling of the trial court in granting defendant's motion for judgment as of nonsuit? Consideration of the pertinent acts of the General Assembly, and decided cases in respect thereto, leads to a negative answer.

The policy of insurance here involved is in form the "Standard Fire Insurance Policy of the State of North Carolina" prescribed by the General Assembly, Section 14 of Chapter 378, 1945 Session Laws, by which G.S. 58-176 and G.S. 58-177, as they then appeared, were repealed and new sections of the same numbers were inserted. In the new G.S. 58-176 the General Assembly has declared in pertinent part " (1) The printed form of a policy of insurance, as set forth in subsection three shall be known and designated as the 'Standard Fire Insurance Policy of the State of North Carolina.'

" (2) No policy or contract of fire insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in this State, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy . . .

" (3) The form of the standard fire insurance policy of the State of North Carolina . . . shall be as follows: . . . This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations, and agreements as may be added hereto, as provided in this policy."

And among the stipulations set forth in such standard form of policy it is provided that when loss occurs, the insured shall file with insurer proof of loss, as therein prescribed and that "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have

been complied with, and unless commenced within twelve months next after inception of the loss."

In this connection the word "inception" as defined by Webster means "act or process of beginning; commencement; initiation." Hence as used above "inception" necessarily means that the beginning, the commencement, the initiation of the loss was that caused by the fire.

Moreover, the General Assembly declared in the 1945 Act, Chapter 378, that "All laws and clauses of laws in conflict herewith are hereby repealed," and the Act became effective July 1, 1945.

And this Court in *Meekins v. Ins. Co.*, 231 N.C. 452, 57 S.E. 2d 777, decided in 1951, in opinion by *Denny, J.*, held in effect that the provision of the Standard Fire Insurance Policy of the State of North Carolina that an action to recover thereon must be commenced within twelve months next after the inception of the loss, unless a longer time for instituting suit has been agreed upon between the parties, and such agreement appears upon the face of the policy, is valid as a contractual limitation, and is binding upon and enforceable between the parties.

To like effect, in principle, are these decided cases: *Holly v. Assurance Co.* (1915), 170 N.C. 4, 86 S.E. 694; *Tatham v. Ins. Co.* (1921), 181 N.C. 434, 107 S.E. 450; *Welch v. Ins. Co.* (1926), 192 N.C. 809, 136 S.E. 117; *Midkiff v. Ins. Co.* (1929), 197 N.C. 139, 147 S.E. 812; *Johnson v. Ins. Co.* (1931), 201 N.C. 362, 160 S.E. 454; *Rouse v. Ins. Co.* (1932), 203 N.C. 345, 166 S.E. 177; *Zibelin v. Ins. Co.* (1948), 229 N.C. 567, 50 S.E. 2d 290.

In the *Welch case, supra,* this Court in Per Curiam opinion referring to grounds upon which judgment of nonsuit may be sustained, stated that "Failure of plaintiff, however, to commence the action within twelve months next after the fire, without allegation and proof of waiver or estoppel, precluding this defense, is sufficient," adding "Decisions of this Court are all to this effect," citing *Beard v. Sovereign Lodge* (1922), 184 N.C. 154, 113 S.E. 661, and other cases there enumerated.

In the *Midkiff case, supra,* this Court held that the terms and conditions of the standard form of a fire insurance policy, C.S. 6436, 6437, and the stipulations as to a valid waiver thereof are valid and binding on the parties. *Connor, J.,* opened the opinion of the Court by saying: "When a policy of insurance, in the form prescribed by statute (C.S. 6437), and known and designated as the Standard Fire Insurance Policy of North Carolina (C.S. 6436), has been issued by an insurance company and accepted by the insured, and has thereby become effective for all purposes as their contract, the rights and liabilities of both the insurer and the insured, under the policy, must be ascertained and determined in accordance with its terms and provisions. These terms and provisions have been prescribed by statute, and are valid in all

respects; they are just both to the insurer and to the insured. Each is presumed to know all the terms, provisions and conditions which are included in the policy. Both are ordinarily bound by them . . ." See also *Johnson v. Ins. Co.* (1931), 201 N.C. 362, 160 S.E. 454.

Moreover in *Rouse v. Ins. Co., supra,* the judgment of the Court sustained the demurrer upon the ground that it appeared "to the Court that the plaintiff did not institute his action on the policy sought to be recovered on within the twelve months next after the fire, and under the terms of said standard fire insurance policy of the State of North Carolina, the type of the policy sued on, it is required as a condition precedent to the maintenance of any action for recovery thereon that such action shall be commenced within said period." And this Court, in Per Curiam opinion, affirming judgment below, declared: "The decisions of this Court are to the effect that the contractual limitation of twelve months in which to bring suit, inserted in a fire insurance policy by virtue of C.S. 6437, is valid and binding," citing *Holly v. Assurance Co., supra,* and *Tatham v. Ins. Co., supra.*

To like effect is *Zibelin v. Ins. Co.* (1948), *supra,* involving a standard fire insurance policy. There *Devin, J.,* later *C. J.,* summarizes: "Unfortunately for the plaintiff, he failed to observe the terms of his policy and to comply with its plainly written provisions. The contract between the plaintiff and the Insurance Company embodied in the standard form of fire insurance is one prescribed by statute (G.S. 58-177), and its provisions have been held by this Court to be valid and just to insured and insurer. *Greene v. Ins. Co.,* 196 N.C. 335, 145 S.E. 616. The rights and liabilities of both under the policy must be ascertained and determined in accord with its terms," citing *Ins. Co. v. Wells,* 226 N.C. 574, 39 S.E. 2d 741; *Midkiff v. Ins. Co., supra; Muse v. Assurance Company,* 108 N.C. 240, 13 S.E. 94.

And it is worthy of note that the Federal District Court of Florida, Jacksonville Division, in case of *Holderness v. Hamilton Fire Ins. Co. of New York* (1944), 54 Fed. Sup. 145, interpreting the North Carolina statute, held that "A provision in fire insurance policy, issued to North Carolina citizens on building in such State, that no action thereon shall be sustainable, unless commenced within 12 months after fire, is valid and enforceable in North Carolina, and hence bars action on policy in Florida after such time in absence of countervailing circumstances." See also Ann. 112 A.L.R. p. 1288; also 121 A.L.R. at pages 759 and 772. Anno. Contractual Limitation of Time for Suit.

Now in the light of contentions made by and for appellant on this appeal a brief history of the legislation in respect to the "Standard Fire Insurance Policy of the State of North Carolina" may be appropriate and informative in reference to the many decisions of this Court pertaining to the subject.

The General Assembly of 1893, in Chapter 299, amended the insurance law then in effect in North Carolina so as to adopt, by reference, and provide for the exclusive use in this State the Standard Fire Insurance Policy prescribed under certain insurance law of the State of New York. But the act did not spell out the form of the policy.

Thereafter, in 1899, the General Assembly passed a comprehensive act, Chapter 54, entitled "An Act to Regulate Fire Insurance and Other Companies." This act, under the sub-heading "Fire Insurance," and in Section 43 declared that "No fire insurance company shall issue fire insurance policies on property in this State other than those of standard form filed in the office of the insurance commissioner of the State, known and designated as the standard fire insurance policy of the State of North Carolina, except" (Exception not here pertinent) ; and in subsection f of Section 43 the form of such policy is prescribed and set out in detail.

And in Section 117 certain laws relating to insurance, among them Chapter 29 of The Code of 1883, and Chapter 299, Laws 1893, were repealed.

Moreover this act of 1899, as amended, was codified and incorporated as Chapter 100 entitled "Insurance" in the Revisal of 1905 of North Carolina. And Sec. 43 of this act, P.L. 1899 Chapter 54, became, in the main, Sections 4759, adopting standard fire insurance policy, and 4760, prescribing the form and conditions, stipulations and agreements of such standard form.

Next the General Assembly, by Sec. 9, Chapter 109, P.L. 1915, amended the form and the provisions of standard form of policy described in Revisal 4760, incorporating in the body thereof the condition that "This policy is made and accepted subject to the foregoing stipulations and conditions printed on the back hereof, which are hereby made a part of this policy, together with such other provisions, stipulations and conditions as may be endorsed hereon or added hereto as herein provided."

And it is noted that there is set out in the Act of 1899, and in the codification thereof in the Revisal of 1905, and in the Act of 1915, respectively, above described, a contractual limitation substantially as follows: No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless the insured shall have complied with all the requirements of this policy, nor unless commenced within twelve months next after the fire.

And it is declared in Sec. 13 of the 1915 Act that "All laws and parts of laws in conflict with or inconsistent with this Act are hereby repealed."

Thereafter the provisions of the 1915 Act pertaining to the adoption, and to the form of standard policy, in substantial accord, became Sec-

tions 6436 and 6437 of the Consolidated Statutes of North Carolina of 1919.

And thereafter upon the adoption of the General Statutes of North Carolina, effective December 31, 1943, Sections 6436 and 6437 of Consolidated Statutes, in substantial accord, including the contractual limitation as to time within which a suit may be commenced, as above recited, became G.S. 58-176 and G.S. 58-177.

Thereafter the General Assembly, 1945 Session Laws, Chapter 378, amended Chapter 58 of the General Statutes of North Carolina relating to fire insurance by repealing Sections G.S. 58-176 and G.S. 58-177, and inserting new sections of same numbers, as hereinabove related.

Among the stipulations made a part of the policy are these:

*"Waiver Provisions:* No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein . . .

*"Requirements In Case Loss Occurs:* The insured shall give immediate written notice to this company of any loss, . . . and within sixty days after the loss, unless such time is extended in writing by this company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: The time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, . . .

*"Suit:* No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

In summary it may be noted that (1) in the act of 1899, (2) in the codification in Revisal of 1905, (3) in the act of 1915, (4) in the codification of Consolidated Statutes of 1919, and (5) in the General Statutes, as hereinabove set forth, the limitation agreement as to suit each reads as follows: "Nor unless commenced within twelve months next after the fire," whereas the new section of the 1945 act reads, "and unless commenced within twelve months next after the inception of the loss."

In other words, the provisions of the limitation in the 1945 Act are used conjunctively, that is, there must be compliance with all the requirements of the policy, and the suit or action must be commenced within twelve months next after inception of the loss.

Moreover, since it is contended that the contractual limitation as to suit should be construed *in pari materia* with the provisions of Revisal 4809, now G.S. 58-31, as was done in *Modlin v. Ins. Co.*, 151 N.C. 35, 65 S.E. 605, a case decided in the year 1909, before the enactment of the Act of 1915, repealing all laws and parts of laws in conflict or inconsistent therewith, it is appropriate to interpose here the history of the statute G.S. 58-31, formerly L. 1899 Chap. 54, Sections 23 and 106; L. 1901 Chap. 391, Section 8; Revisal 4809; C.S. 6290, relied upon by appellants in instant case.

This statute originated in this manner: The General Assembly of the year 1899, as above related, passed a comprehensive act, Chapter 54, entitled "An Act to Regulate Fire Insurance and Other Companies." In Section 1 thereof it is declared that "the word 'domestic' designates those companies incorporated or formed in this State and with home offices therein." And under sub-division entitled "North Carolina or Domestic Companies, Organizations, etc.," Section 23 read as follows: "No such company shall make any condition or stipulation in its insurance contracts concerning the courts or jurisdiction wherein any suit thereon may be brought, nor shall they limit the time within which such suit may be commenced to less than one year after the cause of action accrues, and any such condition or stipulation shall be void." And under heading "Insurance in Unauthorized Companies," Section 106 read as follows: "No person licensed to do business under this act shall limit the term within which any suit shall be brought against such person to a period less than one year from the time when the loss insured against shall accrue." And this Section 106 was amended, Public Laws 1901, Chapter 391, Section 8, by adding at the end thereof this clause: "Or less than six months from any time at which a plaintiff shall take a nonsuit to an action begun within the legal time."

Thereafter Sections 23 and 106, as so amended, were codified in the Revisal of 1905 as Section 4809, to read as follows: "Stipulations as to jurisdiction and limitation of actions. No company or order, domestic or foreign, authorized to do business in this state under this chapter, shall make any condition or stipulation in its insurance contracts concerning the court or jurisdiction wherein any suit or action thereon may be brought, nor shall it limit the time within which such suit or action may be commenced to less than one year after the cause of action accrues or to less than six months from any time at which a plaintiff shall take a nonsuit to an action begun within the legal time. All conditions and stipulations forbidden by this section shall be void."

And the provisions of Rev. 4809 were later codified into Consolidated Statutes of 1919, as Section 6290, and lastly codified into General Statutes as G.S. 58-31, in substantially the same language as in Revisal 4809.

And though the statute pertaining to form of Standard Fire Insurance Policy of the State of North Carolina as originally written in the year 1899, and re-written in the years 1915 and 1945, the verbiage of Revisal 4809 remained substantially the same.

It will be noted, in this connection, that the *Modlin case, supra,* was decided in the interim between the 1905 codification of the 1899 act, and the enactment of the 1915 act. And it is significant that the 1915 act made no reference to Revisal 4809, but re-enacted the standard form of fire insurance policy, and declared "that all laws and parts of laws in conflict with or inconsistent with this act are hereby repealed." Thus this repealing clause had the effect of repealing Revisal 4809 in so far as it was in conflict or inconsistent with the contractual limitation in the standard policy as formulated and adopted in said act is concerned. *Johnson v. Roberson,* 171 N.C. 194, 88 S.E. 231; *Commrs. v. Commrs.,* 186 N.C. 202, 119 S.E. 206; *Spaugh v. Charlotte,* 239 N.C. 149, 79 S.E. 2d 748. It too had the effect of overruling decisions of this Court made in the interim giving effect to conflicting and inconsistent provisions of Revisal 4809. And the tenor of subsequent decisions all along the line clearly indicate that this Court was so impressed,—that is, that the provisions of the contractual limitations are valid, and binding upon the parties, and are enforceable as the obligations of the parties.

In this connection it may be noted incidentally that the General Assembly of 1883, at a time when no standard form of fire insurance policy had been adopted in this State, passed an act, Chapter 57, which was codified as Chapter 29 of The Code of 1883, entitled "Insurance." This Act declared that: "It shall be unlawful for any person, whether natural or corporate, either as principal or as agent, to do or contract or solicit for any insurance business with any resident of this State, unless such insurance business shall be licensed, as provided in this act, and no contract for any such insurance business entered into otherwise than as this act permits, shall be enforceable in any of the courts of this State." The Code 3061. L. 1883, Chapter 57, Section 1.

And in Section 16 of the Act of 1883 it is declared that: "No person licensed to do business under this act shall limit the term within which any suit shall be brought against such person to a period less than one year from the time when the loss insured against shall accrue." This Section 16 was codified as Section 3076 of The Code.

While this Section was in effect, before the adoption of standard form of fire insurance policy in North Carolina, this Court rendered opinions in the cases of *Muse v. Assurance Co.* (1891), *supra; Dibbrell v. Ins. Co.* (1892), 110 N.C. 193, 14 S.E. 783, and *Lowe v. Accident Asso.* (1894), 115 N.C. 18, 20 S.E. 169. The principles there applied are applicable to factual situation of case in hand.

In the *Muse case, supra,* this headnote epitomizes the opinion: "A stipulation in a policy of insurance that the insured shall bring his action for any loss within twelve months next after the loss shall accrue is not in contravention of the general policy of the statutes of limitation, nor with the special statute of this State (The Code, Sec. 3076) which limits the powers of insurance companies to make such stipulations or conditions to a 'period less than one year from the time of the loss.' "

*Avery, J.,* writing for the Court in this *Muse case* had this to say: "It seems to be established that a provision in a policy that the insured may bring suit within twelve months after the loss, and not later, being in the nature of a condition precedent, is not in contravention of the policy of the statutes of limitation, and will be upheld by the courts." And the Court continued: "The condition that the suit shall be instituted, if at all, within a year after the loss has been sustained, is reasonable and valid . . ."

To like effect are *Dibbrell v. Ins. Co.* (1892), *supra,* and *Lowe v. Accident Asso.* (1894), *supra.*

The *Dibbrell case* is premised upon the principle that "a stipulation in an insurance policy that a failure to bring suit within a time therein prescribed after loss shall constitute a forfeiture, is a contract, and not a statute of limitation . . ."

And in the *Lowe case, supra,* while this Court dismissed the appeal as premature (*Edwards v. Raleigh,* 240 N.C. 137, 81 S.E. 2d 273), the opinion concluded with this declaration: "In the absence of any proof tending to show a waiver of the benefit of this stipulation on the part of the defendant company, we must hold that it is binding upon the plaintiffs, and operates to defeat the action, not as a statute of limitation, but as a reasonable agreement insisted on by defendant, in order to avoid the danger incident to making defense after the lapse of a long time intervening between the loss of injury and the institution of suit."

Moreover, under the terms of the standard fire insurance policy of the State of North Carolina, plaintiffs agreed and were required to file proof of loss within sixty days after the fire occurred, and unless the requirements of the policy shall have been complied with, that is, unless proof of loss shall be filed as required, within the prescribed period, no action may be maintained on the policy. See *Gardner v. Ins. Co.,* 230 N.C. 750, 55 S.E. 2d 694, and cases cited. Indeed it is said in the *Gardner case* that ordinarily compliance with these provisions of the policy must be alleged in the complaint and proved upon the trial. Here there is no evidence that proof of loss was filed.

The record discloses that the fire occurred on November 26, 1953. And this action was commenced by summons dated November 27, 1954

—more than twelve months from the inception of the loss. Hence in any event it is manifest that the trial judge properly allowed the motion for judgment as of nonsuit on the ground of failure of plaintiffs to commence the action within twelve months next after inception of the loss.

Cases cited and relied upon by appellant are distinguishable in factual situation, and not controlling here.

All other assignments of error brought up have been duly considered and in them error is not made to appear. Thus the judgment from which appeal is taken will be

Affirmed.

PARKER, J., dissents.