DWIGHT E. AVIS AND WIFE, MARGARET C. AVIS v. THE HARTFORD FIRE INSURANCE COMPANY, A CORPORATION

No. 27

(Filed 11 April 1973)

1. Insurance § 143— "all risks" policy — prerequisites for coverage

Coverage under a policy insuring against "all risks of physical loss" extends only when the following conditions are met: (1) the loss must be caused by a fortuitous event; (2) the loss or damage

Avis v. Insurance Co.

must not result wholly from an inherent quality or defect in the subject matter; (3) the loss or damage must not result from the intentional misconduct or fraud of the insured; and (4) the risk must be lawful.

2. **Insurance § 143— "all risks" policy — multiple causes of loss**

Generally, coverage under an "all risks" policy will extend when damage results from more than one cause even though one of the causes is specifically excluded.

3. **Insurance § 143— "all risks" policy — inherent deficiencies — activation by peril insured against**

Insurers are not liable under an "all risks" policy for property destroyed by the effect of its own inherent deficiencies or tendencies unless these tendencies are made active and destructive by a peril insured against.

4. **Insurance § 144— "all risks" policy — failure of wood to hold paint — fortuitous event**

Loss occasioned when paint applied to woodwork and paneling in plaintiffs' home began to blister and peel, the painter attempted to remove the paint with commercial solvents but all the paint couldn't be removed, and the painter attempted to repaint but the paint wouldn't stick where the solvents had been used, leaving the wood stained and mottled, *is held* within the coverage of a policy insuring against "all risks of physical loss," since the loss was caused by a fortuitous event and was not solely the product of the inherent qualities of the wood but was caused partly by actions of the painter.

5. **Insurance § 137— action on "all risks" policy — time limitation — time of loss**

Where paint applied to woodwork and paneling in plaintiffs' home began to blister and peel in November 1965 and began "popping" off the walls and woodwork in December 1965, and a painter unsuccessfully attempted in January 1966 to remove the paint and to repaint the unsatisfactory areas, plaintiffs' action instituted in December 1966 to recover under an "all risks" policy for the pecuniary injury resulting from the attempted removal of paint and the attempted repainting was commenced within twelve months of the "inception of the loss" since plaintiffs first suffered the loss complained of at the time of the occurrences in January 1966.

6. **Insurance § 130— "all risks" policy — no formal notice of proof of loss**

An action under an "all risks" insurance policy was not barred because of the failure of plaintiffs to file a formal proof of loss within the required 60-day period where the insured gave notice of loss and the insurer failed to furnish a blank for the purpose of providing written proof of loss, and plaintiffs within the time fixed by the policy for filing proof of loss gave written proof covering the occurrence, character and extent of the loss. G.S. 58-31.1.

ON *certiorari* to review the decision of the Court of Appeals reported in 16 N.C. App. 588, 92 S.E. 2d 595, which

reversed the judgment of *Winner, J.*, at 24 April 1972 Session of District Court of BUNCOMBE County.

This civil action for recovery on a policy of insurance issued by defendant, The Hartford Fire Insurance Company, to plaintiffs, homeowners, was instituted on 3 May 1971. Action was originally instituted by the same parties against the same defendant on the same claim on 28 December 1966. Plaintiffs gave notice of voluntary dismissal on 19 May 1970 pursuant to Rule 41 (a) (1) of the North Caroina Rules of Civil Procedure.

The policy, in part, provided: "This policy with respect to Coverage A and B under Section I [the home of the plaintiffs] insures against all risks of physical loss . . . except as excluded or limited herein."

In October, 1965 plaintiffs Dwight E. Avis and wife, Margaret C. Avis, employed R. A. Ingle to paint certain woodwork and paneling in three upstairs bedrooms and two baths of their home. Approximately one month after the painting was begun, the paint began to "blister and peel." The painter, during January of 1966, attempted to remove the paint by using paint solvents and by other means, but all the paint could not be removed. He then attempted to repaint the area, but the paint would not stick where the paint remover had been used. The paneling became stained and mottled and acquired a glossy, slick finish.

On 21 January 1966 plaintiffs notified defendant of the condition of the walls, and defendant thereafter employed the General Adjustment Bureau as its agent to investigate and adjust plaintiffs' claim. At the request of the said adjuster, plaintiffs secured an estimate of the cost of repairs from a contractor and furnished this information to the adjuster. Defendant's adjuster also had its contractor make an estimate of damages and cost of repairs. In February of 1966 an employee of the General Adjustment Bureau told plaintiffs to go ahead with repairs. Plaintiffs proceeded to have the repairs made at a cost of $1,625.92.

On 7 September 1966 defendant, through its adjuster, advised plaintiffs that it would not pay the claim because the damage was not an accident within the terms of its policy.

District Judge Winner heard the case without a jury and after finding facts substantially the same as above set forth concluded:

"2. That the diminution in market value of the wood paneling, molding, baseboards, frames around windows and doors and closet doors in January of 1966, resulting from the fact that all of the paint on the wood paneling and woodwork herein could not be removed and that the areas from which paint had been removed could not be painted and from the staining and mottling of the said wood paneling and woodwork was a fortuitous event and happening occurring in January of 1966 without intentional or fraudulent acts on the part of the plaintiffs and is within the coverage of the 'all risks' provision of the policy upon which suit has been instituted, and that said loss and damage is within the terms and meaning of the policy provision quoted in Paragraph 2 of the findings of fact, and said loss and diminution in market value was not within the terms of any of the pleaded conditions, exclusions or exceptions to coverage under said policy."

Judgment was entered for plaintiffs in the amount of $1,625.92 with interest from 25 March 1966. The Court of Appeals reversed.

We allowed plaintiffs' petition for writ of certiorari on 18 January 1973.

*Bennett, Kelly & Long, P.A., by Robert B. Long, Jr.* for *plaintiff appellees.*

*Williams, Morris and Golding, by William C. Morris, Jr.* for *defendant appellant.*

BRANCH, Justice.

Plaintiffs contend the Court of Appeals erred in holding that their loss was not within the coverage afforded by the "all risks" policy issued to plaintiffs by defendant.

The Court of Appeals concluded that coverage did not extend because the loss was not the result of a fortuitous event, but was "the product of inherent qualities of the property insured."

Recovery will be allowed under a policy affording "all risks" coverage for all losses of a fortuitous nature not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding loss from coverage. The term "all risks" is not to be given a restrictive meaning. *Egan v. Washington General Ins. Corp.*, 240 So. 2d 875 (Fla. App. 1970); *Miller v. Boston Insurance Co.*, 420 Pa. 566, 218 A. 2d 275; *Fidelity Southern Fire Insurance Co. v. Crow*, 390 S.W. 2d 788 (Tex. Civ. App. 1965); *Bryant v. Continental Insurance Co.*, 2 Wash. App. 37, 466 P. 2d 201; Annot., 88 A.L.R. 2d 1124; 44 Am. Jur. 2d Insurance § 1433; 13 Couch on Insurance, 2nd Ed. § 48:138. However, the cases and commentaries are unanimous in holding that "all losses" are not included in the term "all risks." See e.g., *British & Foreign Marine Ins. Co. v. Gaunt*, 2 A.C. 41 (1921); *Finkelstein v. Central Mutual Insurance Co.*, 8 Misc. 2d 261, 166 N.Y.S. 2d 989; 5 Appleman, Insurance Law and Practice, § 3092.

In the case of *British & Foreign Marine Ins. Co. v. Gaunt, supra,* plaintiff sued upon an "all risks" policy for water damage to bales of wool. Although the evidence did not disclose how the cargo was damaged, it was proved at trial that the damage arose while the ship carrying the wool was in transit. In dismissing the Insurance Company's appeal, the Court stated:

> "In construing these policies it is important to bear in · mind that they cover 'all risk.' These words cannot, of course, be held to cover all damage however caused, for such damage as is inevitable from ordinary wear and tear and inevitable depreciation is not within the policies. . . . Damage, in other words, if it is to be covered by policies such as these, must be due to some fortuitous circumstance or casualty.

*          *          *

> 'All risks' has the same effect as if all insurance risks were separately enumerated; for example, it includes the risk that when it happens to be raining the men who ought to use the tarpaulins to protect the wool may happen to be neglecting their duty. This concurrence is fortuitous; it is also the cause of the loss by wetting. It appears to be what happened. For wool to get wet in the rain is a casualty, though not a grave one; it is not a thing intended but is accidental; it is something which injures the wool

from without; it does not develop from within. It would not happen at all if the men employed attended to their duty.

There are, of course, limits to 'all risks.' They are risks and risks insured against. Accordingly the expression does not cover inherent vice or mere wear and tear or British capture. It covers a risk, not a certainty; it is something, which happens to the subject-matter from without, not the natural behavior of that subject-matter, being what it is, in the circumstances under which it is carried. Nor is it a loss which the assured brings about by his own act, for then he has not merely exposed the goods to the chance of injury, he has injured them himself. Finally the description 'all risks' does not alter the general law; only risks are covered which it is lawful to cover, and the onus of proof remains where it would have been on a policy against ordinary sea perils."

The court in *Finkelstein v. Central Mutual Insurance Co.,* *supra,* considered a question similar to the one here presented. The court held that discoloration caused by the excessive cleaning of carpet with an ammonia solution was an accident and a fortuitous loss within the coverage of an "all risks" policy. The court said:

"As these all-risk policies are generally available to householders and as their sale is not limited to specialists, the run-of-the-mill notion of what constitutes an accident is pertinent. The scientist's or technician's understanding in depth is not relevant. From the viewpoint of this plaintiff there was an accident here and a fortuitous loss, for clearly the carpeting was not deliberately exposed to damage."

In *Chute v. North River Ins. Co.,* 172 Minn. 13, 214 N.W. 473, the plaintiff sought recovery under an "all risks" policy for a fire opal which became cracked. The plaintiff averred in his complaint that damage to the opal was not caused by any outside force but was due to an "inherent vice" in the gem. Holding that the plaintiff could not recover under the policy, the court stated:

"The diligence of counsel has failed to furnish us any case in point or even of much help except those arising on policies of marine insurance. But they furnish, we think, a

fair analogy. The contract is an 'all risk' policy, and of a kind which characterizes marine insurance more than any other. The rule of marine insurance is that, under such a policy, the insurer is not liable 'for losses resulting from inherent vice, defect, or infirmity in the subject-matter insured.' 38 C.J. 1097. In Arnould on Marine Insurance (11th Ed.) § 778, it is put thus:

> ' * * * The underwriter is not liable for that loss or deterioration which arises solely from a principle of decay or corruption inherent in the subject insured, or, as the phrase is, from its proper vice; as when fruit becomes rotten, or flour heats, or wine turns sour, not from external damage but entirely from internal decomposition.'
>
> *            *            *
>
> . . . Because the policy must be considered as one against damage from fortuitous and extraneous risks, it is not permissible to resort to an ultraliteral interpretation which will convert it into a contract or warranty against loss resulting *wholly* from inherent susceptibility to dissolution." (Emphasis added.)

[1] Consideration of these cases and other authorities leads us to conclude that coverage under a policy insuring against "all risks of physical loss" extends only when the following conditions are met:

(1) The loss must be fortuitous; i.e., caused by a fortuitous event. See generally, Annot., 88 A.L.R. 2d 1124; 44 Am. Jur. 2d, Insurance, § 1433.

The word "fortuitous" means "occurring by chance without evident causal need or relation or without deliberate intention." Webster's Third New International Dictionary, p. 895 (1961). See also, *Kirkley v. Insurance Company*, 232 N.C. 292, 59 S.E. 2d 629; Ballentine's Law Dictionary, 3rd Ed., p. 492 (1969); Black's Law Dictionary, 4th Ed., p. 783 (1968). A fortuitous event may be said to be one not certain to occur. *British & Foreign Marine Ins. Co. v. Gaunt, supra.*

(2) The loss or damage must not result wholly from an inherent quality or defect in the subject matter. *Greene v. Cheetham*, 293 F. 2d 933 (2nd Cir. 1961); *Mellon v. Federal*

*Insurance Co.,* 14 F. 2d 997 (S.D.N.Y. 1926) ; *Chute v. North River Ins. Co., supra; Harvey v. Switzerland General Ins. Co.,* 260 S.W. 2d 342 (Mo. App. 1953) ; *Glassner v. Detroit Fire and Marine Insurance Co.,* 23 Wis. 2d 532, 127 N.W. 2d 761; 43 Am. Jur. 2d Insurance § 2; 5A Appleman, Insurance Law and Practice, § 3272. In other words, the damage must result from at least one extraneous cause. See *British & Foreign Marine Ins. Co. v. Gaunt, supra; Chute v. North River Ins. Co., supra.*

(3) The loss or damage must not result from the intentional misconduct or fraud of the insured. *Sun Insurance Office, Ltd. v. Clay,* 133 So. 2d 735 (Fla. 1961) ; Annot., 88 A.L.R. 2d 1124. See also, *Western Horse & Cattle Ins. Co. v. O'Neill,* 21 Neb. 548, 32 N.W. 581.

(4) The risk must be lawful. *British & Foreign Marine Ins. Co. v. Gaunt, supra.*

See *Gorman, All Risks of Loss v. All Loss:* An Examination of Broad Form Insurance Coverages, 34 Notre Dame Law. 346 (1959), for an excellent discussion of coverage under "all risks" policies and the principles set forth above.

In instant case there is no evidence or contention of intentional misconduct, fraud or unlawfulness of risk. Manifestly, plaintiffs did not know of the peril and did not intend to cause the harm that befell them. At most plaintiffs may have been negligent; without more, however, such conduct would not operate to deny coverage on the basis of intentional misconduct. For cases allowing recovery where one's negligence constituted the fortuitous event, see *C. H. Leavell & Co. v. Fireman's Fund Insurance Co.,* 372 F. 2d 784 (9th Cir. 1967) ; *Carter Tug Service, Inc. v. Home Insurance Company,* 345 F. Supp. 1193 (S.D. Ill. 1971) ; *General American Transp. Corp. v. Sun Insurance Office, Ltd.,* 239 F. Supp. 844 (E.D. Tenn. 1965), affirmed 369 F. 2d 906 (6th Cir. 1966) ; *Redna Marine Corp. v. Poland,* 46 F.R.D. 81 (D.C.N.Y. 1969) (citing many cases) ; *Egan v. Washington General Ins. Corp., supra; Finkelstein v. Central Mutual Insurance Co., supra,* and cases cited therein. See also, 5 Appleman, Insurance Law and Practice, § 3092.

Defendant does not deny coverage because of a specific exclusion contained in the policy. Therefore, if the loss suffered by plaintiffs was caused by a fortuitous event and was not solely the product of the inherent qualities of the insured prop-

erty, the trial judge correctly concluded that the loss suffered by plaintiffs was within the coverage of the policy.

Had plaintiffs sought recovery because the walls had decayed, deteriorated, faded or disintegrated after a period of time without the action of external forces, there could have been no recovery. This is so because such damage inevitably occurs with the passage of time. The loss here, however, was not inevitable; it was fortuitous in that it was caused by extraneous events not certain to occur.

Plaintiffs sought recovery for loss or damage caused not only by the peculiar nature of the paneling and woodwork to reject paint, but by other extraneous circumstances. The actions of the reputable painter employed by plaintiffs in applying the paint to the the walls, attempting to remove it with commercial solvents, and in attempting to repaint the walls were extraneous forces without which the loss would not have occurred. The loss, therefore, came about as a result of a combination of forces; the loss did not result *solely* from the fact that paint would not adhere to the wood.

[2, 3]    As a general rule, coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded. *General American Transp. Corp. v. Sun Insurance Office, Ltd., supra; Firemen's Fund Ins. Co. of San Francisco v. Hanley,* 252 F. 2d 780 (6th Cir. 1958); *Pearl Assur. Co. v. Stacey Bros. Gas Const. Co.,* 114 F. 2d 702 (6th Cir. 1940). Similarly, "insurers are not liable for property destroyed by the effect of its own inherent deficiencies or tendencies, *unless these tendencies are made active and destructive, by a peril insured against.*" (Emphasis added.) *Providence Washington Ins. Co. v. Adler,* 65 Md. 162, 4 A. 121.

[4]    Plaintiffs' loss, then, being fortuitous and not caused solely by an inherent defect, is within the coverage of the "all risks" insurance policy issued to them by defendant.

[5]    Defendant contends that plaintiffs' action is barred because it was not instituted within "twelve months next after inception of the loss" as required by a provision in the policy, and because plaintiffs did not file written proof of loss within the required 60-day period.

Due to the nature of these contentions, a brief recapitulation of the facts is necessary.

Painting began in October, 1965. In November of that year the paint started blistering and peeling. Paint began "popping" off the walls and woodwork in December, whereupon the painter assured plaintiffs that he would "make it satisfactory" by removing the paint and repainting the unsatisfactory structures. This undertaking commenced in January of 1966 but was entirely abandoned during that month because no paint would adhere to the surface of the wood. At that time the surfaces became "slick as glass," streaked and mottled.

Defendant was notified of this condition on 21 January 1966 and employed an adjuster to handle the claim. The adjuster obtained a statement from Mrs. Avis on 25 January 1966 which gave full information concerning the occurrence, character and extent of the loss. Defendant denied coverage on 7 September 1966, and plaintiffs instituted action on 28 December 1966.

A provision in an insurance policy providing that action must be instituted within twelve months after loss has been recognized by this Court as a reasonable and lawful contractual limitation, even though it is a lesser time than provided by statutory limitations. Failure to bring action within the time specified bars recovery unless the contractual time limitation is waived by the insurers. *Boyd v. Insurance Co.*, 245 N.C. 503, 96 S.E. 2d 703; *Heilig v. Aetna Life Insurance Co.*, 152 N.C. 358, 67 S.E. 927; *Lowe v. Accident Association*, 115 N.C. 18, 20 S.E. 169; *Muse v. Assurance Co.*, 108 N.C. 240, 13 S.E. 94.

The provision contained in property insurance policies requiring action to be instituted within "twelve months next after inception of the loss" has been construed by the majority of jurisdictions to mean that the policy limitation runs from the date of the occurrence of the destructive event giving rise to the claim of liability against the insurer. *Sager Glove Corp. v. Aetna Ins. Co.*, 317 F. 2d 439 (7th Cir. 1963), cert. den. 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed. 2d 165; *Naghten v. Maryland Casualty Co.*, 47 Ill. App. 2d 74, 197 N.E. 2d 489, 24 A.L.R. 3d 1001; *McAlpin v. Day & Meyer*, 68 Misc. 2d 559, 327 N.Y.S. 2d 387, aff'd 336 N.Y.S. 2d 980; *Johns v. New Hampshire Ins. Co.*, 66 Misc. 2d 799, 322 N.Y.S. 2d 324; *Margulies v. Quaker City Fire & Marine Ins. Co.*, 276 App. Div. 695, 97 N.Y.S. 2d 100; *Boyd v. Insurance Co., supra;* Annot., 24 A.L.R. 3d 1007; 18 Couch on Insurance, 2d Ed. § 75:86.

Avis v. Insurance Co.

Most of these cases involved fire, explosion or other like casualty and therefore presented little difficulty in fixing the date of occurrence of the destructive event. Cf. *Johns v. New Hampshire Ins. Co., supra.* The cases, however, furnish meager aid in determining the exact time of loss where there is a progressive loss or one involving a series of contributing destructive or extraneous events.

In the case of *Naghten v. Maryland Casualty Co., supra,* the plaintiff brought action under a homeowner's policy for damage to his home caused by underground water. On 31 May 1959 the floors in a room in his dwelling had become warped, the walls and doors cracked and distorted, and the room completely unusable. The insured became aware of the cause of the loss and the fact that he had a claim under the policy on 31 December 1959. In October, 1960 (within one year after he had learned the cause of damage but more than one year after the defective conditions were fully developed) suit was instituted. The court, holding that there could be no recovery, stated:

> " '. . . It is our conclusion that the meaning of the phrase [twelve months next after inception of the loss] is quite clear. It has nothing to do with the state of mind of the insured. It deals with an objective fact which in the context of this case is a specific act of vandalism or malicious mischief. The loss occurs and has its "inception" whether or not the insured knows of it.'
>
> We readily agree with the plaintiff that if we were to apply the inception of the loss rule to the progressive loss in this case a harsh result would follow. That question is not involved here, however. The plaintiff did not even bring suit within a year of the time he alleged that the defective floor condition was fully developed.
>
> *          *          *
>
> . . . [T]he plaintiff takes the position that on May 31, 1959, the room was unusable because of the shifting of floor and walls. And yet he allowed this condition to exist for over five months without caring to discover whether the damage was covered and not even attempting to fix it. . . . "

In *Western Ins. Co. v. First Presbyterian Church,* 165 Colo. 34, 437 P. 2d 52, plaintiff brought suit under a policy containing an "all risks" endorsement for loss caused by seep-

age and infiltration of gasoline under and around the insured building. The insurance policy became effective between the time gasoline started to collect and the time the building was rendered uninhabitable.

In affirming the trial court's holding that coverage existed under the policy, the court recognized that the chain of events culminating in the loss commenced prior to the inception of the policy, but held there was no *actual* "loss" until the gasoline had accumulated and been built up to such an extent that the building was uninhabitable and too dangerous for continued use.

We find the following definition of loss as related to insurance in Black's Law Dictionary, 4th Ed., p. 1094 (1968):

> *Insurance:* ". . . decrease in value of resources or increase in liabilities; depletion or depreciation or destruction or shrinkage of value; injury, damage, etc. to property or persons injured; injury or damage sustained by insured in consequence of happening of one or more of the accidents or misfortunes against which insurer has undertaken to indemnify the insured; pecuniary injury resulting from the occurrence of the contingency insured against; word 'loss' implies that property is no longer in existence." (Citations omitted.)

In instant case, plaintiffs do not seek recovery for the chipping and flaking of the paint which was discovered in November. This action seeks recovery for the pecuniary injury resulting from the attempted removal of the paint and the attempted repainting of the wood surfaces. The occurrences of these acts in January, 1966 were the events which marked the loss sustained by plaintiffs and gave rise to plaintiffs' claim against defendant. The policy limitation ran from the date of the occurrences of these acts, for they represented the time when plaintiffs first suffered *the* loss complained of. Thus plaintiff's action was commenced within twelve months of the "inception of the loss."

[6] Finally, we consider whether plaintiffs' claim was barred by the fact that no formal proof of loss was filed as required by the policy.

G.S. 58-31.1 provides:

> "When any company under any insurance policy requires a written proof of loss after notice of such loss

has been given by the insured or beneficiary, the company or its representative shall furnish a blank to be used for that purpose. If such forms are not so furnished within fifteen days after the receipt of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss, upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character, and extent of the loss for which claim is made."

There is ample evidence that the insured gave notice of loss and that the company failed to furnish a blank for the purpose of providing written proof of loss. There is also plenary evidence showing that plaintiffs "within the time fixed by the policy for filing proof of loss gave written proof covering the occurrence, character, and extent of the loss for which claim is made." This assignment of error is overruled.

The decision of the Court of Appeals is

Reversed.