**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1485**

———————

WAKE CHAPEL CHURCH, INC.,

    Plaintiff – Appellee,

v.

CHURCH MUTUAL INSURANCE COMPANY, S.I.,

    Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Richard E. Myers, II, Chief District Judge.  (5:21-cv-00114-M)

———————

Submitted:  January 12, 2026                    Decided:  February 19, 2026

———————

Before WILKINSON, NIEMEYER, and AGEE, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ON BRIEF:**  Steven Andrew Bader, Jennifer A. Welch, CRANFILL SUMNER, LLP, Raleigh, North Carolina, for Appellant.  David S. Coats, John T. Crook, BAILEY & DIXON, LLP, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After a snowstorm, Wake Chapel Church, Inc. ("Wake Chapel") discovered damage to the roof of its sanctuary building ("the Sanctuary") and submitted a claim to its insurer, Church Mutual Insurance ("CMIC"). CMIC denied coverage and this lawsuit followed. At the close of a four-day jury trial, the jury found that CMIC was required to cover $1.1 million of damages to Wake Chapel.

On appeal, CMIC argues that the district court applied the incorrect causation standard under North Carolina law, and that there was insufficient evidence of causation and damages. For the reasons set forth below, we disagree and affirm the district court's judgment in its entirety.

## I.

### A.

Wake Chapel operates a church in Raleigh, North Carolina. Its campus includes two buildings: the Life Enrichment Center and the Sanctuary. From 2016 to 2019, both buildings were covered by an "all-risk" insurance policy issued by CMIC (the "Policy").

The Policy covers any "direct physical loss of or damage to [the buildings] caused by or resulting from any Covered Cause of Loss," J.A. 229, provided that it commences "[d]uring the policy period," J.A. 220. Covered losses include "Risks of Direct Physical Loss unless the loss is" excluded or limited in the Policy. J.A. 247. The exclusions include, *inter alia*, "loss or damage caused by or resulting from . . .[r]ust, or other corrosion, decay,

2

deterioration, hidden or latent defect, or any quality in property that causes it to damage or destroy itself[.]" J.A. 249–50.

Following a snowstorm in December 2018, Wake Chapel discovered lengthy scrapes on the Sanctuary's roof. To investigate their cause, Wake Chapel hired an engineer, Lyle Hogan, to inspect the roof. Hogan concluded that sliding ice and snow caused the scratches and damaged the roof.

CMIC's engineer, Howard Rigsby, also inspected the Sanctuary's roof. He concluded that the scratches were not consistent with damage caused by sliding ice and snow. Based on Rigsby's opinion, CMIC concluded there was insufficient evidence to support Wake Chapel's claim that ice and snow caused direct physical damage to the Sanctuary roof. For that reason, it denied Wake Chapel's claim.

## B.

In February 2021, Wake Chapel commenced this action against CMIC in North Carolina state court. CMIC removed the case to federal court based on diversity of citizenship.[1]

In an amended complaint, Wake Chapel alleged four claims for relief: (1) declaratory judgment for coverage in its favor; (2) breach of contract; (3) unfair and deceptive trade practice; and (4) bad faith. CMIC asserted a counterclaim for a declaratory judgment.

---

[1] Wake Chapel is a North Carolina corporation, while CMIC is a Wisconsin corporation with its principal place of business in Wisconsin. J.A. 20, 125.

3

At the close of discovery, CMIC moved for summary judgment. Relevant here, it argued that, under North Carolina law, a covered cause must be the efficient and predominant cause of the damage to permit recovery. The district court disagreed, reasoning that North Carolina precedent departed from that causation standard with respect to "all-risk" insurance policies, like the Policy. J.A. 2931–32. Accordingly, the district court denied CMIC's motion as to Wake Chapel's declaratory judgment and breach-of-contract claims, but otherwise granted the motion as to Wake Chapel's other claims.

The case proceeded to a four-day jury trial in July 2024. The bulk of the trial was devoted to testimony from the parties' competing engineering experts, Hogan and Rigsby. At the close of Wake Chapel's case, CMIC moved for judgment as a matter of law. The district court denied that motion, and the jury ultimately found that the 2018 snowstorm caused the damage on the Sanctuary roof and found CMIC liable to Wake Chapel for $1.1 million.

At that point, CMIC moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The district court denied the motion.

CMIC timely appealed, and this Court has jurisdiction under 28 U.S.C. § 1291.

II.

On appeal, CMIC raises three issues: (1) did the district court use the correct causation standard, (2) if it used the correct standard, was that standard correctly applied,

4

and (3) did the district court correctly find there was sufficient evidence of damages? We address each issue in turn below.[2]

A.

The district court rejected CMIC's argument that a covered cause must be the efficient and predominant cause of damage. Instead, it instructed the jury that, because the Policy was an "all risks" policy, North Carolina law provides an exclusion "must be the *sole cause* of the injury or damage" to avoid coverage. J.A. 3999 (emphasis added).

The district court's conclusion comports with North Carolina precedent, which has set out different causation standards for all-risk insurance policies than what applies to other types of insurance coverage. CMIC relies on *Wood v. Michigan Millers Mutual Fire Insurance Co.*, 96 S.E.2d 28 (N.C. 1957), where the North Carolina Supreme Court considered an insurance policy—not an all-risk policy—and upheld a jury instruction that coverage was available if the damage "result[ed] from a peril which was the efficient and predominating cause" without another "cause sufficient . . . to produce the damage." *Id.* at 30. But in *Avis v. Hartford Fire Insurance Co.*, 195 S.E.2d 545 (N.C. 1973), the state court charted a different course for "all-risk" insurance policies, which permit recovery for nearly

---

[2] The posture in which CMIC raises these issues is as a challenge to the district court's denial of its motion and renewed motion for judgment as a matter of law, as well as its motion for a new trial. CMIC's arguments fail under the more lenient de novo standard applicable to the motions for judgment of law, so this Court evaluates CMIC's arguments through that lens. *Lavis v. Reverse Mortg. Sols., Inc.*, 40 F.4th 181, 186 n.2 (4th Cir. 2022) (Rule 50(a) motions are reviewed de novo); *Burgess v. Goldstein*, 997 F.3d 541, 549 (4th Cir. 2021) (same for Rule 50(b) motions); *see Hicks v. Anne Arundel Cnty.*, 110 F.4th 653, 658 (4th Cir. 2024) (motions for a new trial are reviewed for an abuse of discretion).

5

all fortuitous losses, "unless the policy contains a specific provision expressly excluding loss from coverage." *Id.* at 547. For such all-risk policies, the North Carolina Supreme Court articulated a "general rule" that "coverage will extend when damage results from more than one cause even though one of the causes is specifically excluded." *Id.* at 549; *see State Cap. Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 74 (N.C. 1986) (explaining that, in *Avis*, the North Carolina Supreme Court held that "the insurer must provide coverage" where one cause of an accident "is covered by an 'all risks' insurance policy and the other [] is not").

So, *Avis* and later cases compel the conclusion that "all-risk" insurance policies provide coverage where a cause that is not subject to an exclusion at least partially contributed to the damage. Because the parties do not dispute that CMIC issued Wake Chapel an "all-risk" policy, the district court correctly employed a causation standard in line with *Avis*.[3]

B.

The district court denied CMIC's renewed motion for judgment as a matter of law based, in part, on its conclusion that the jury properly applied the causation standard. CMIC raises four arguments resisting that conclusion, all of which are meritless.

---

[3] CMIC attempts to undermine this conclusion because, in *State Capital*, the North Carolina Supreme Court relied on a California state decision that the Supreme Court of California ultimately stated had been "misinterpreted and misapplied" by other states. *Garvey v. State Farm*, 770 P.2d 704, 705 (Ca. 1989). In *Garvey*, the Supreme Court of California went on to reject a causation approach akin to that articulated in *Avis*. Whatever the merits of that choice, our lodestar—the Supreme Court of North Carolina—came to a different conclusion, and in applying that law, the district court did not err.

6

First, CMIC contends that an inherent defect—the lack of a certain coating included in the roof's original specifications—foreclosed coverage. However there was evidence in the record from which a jury could reject that assertion. Hogan testified that "[t]he sliding ice and snow was a cause of the condition that you see on the roof." J.A. 3618. He further opined that, although the entire roof lacked coating, it "behav[ed] well enough on the east and rather poorly on the west," which he attributed to the snowstorm. J.A. 3914. Under *Avis*, damage is covered unless it was *wholly* caused by an inherent defect. So, the jury's finding did not run afoul of *Avis*.

Second, CMIC argues that the damage started before the policy period, which commenced in 2016, because Hogan could not state the exact date that the ice and snow damage occurred. But, again, the jury heard contrary testimony allowing it to find that, despite CMIC inspecting the Sanctuary in 2013 and an outside contractor inspecting its roofs quarterly, Wake Chapel was unaware of any damage to the Sanctuary's roof before the 2018 snowstorm. J.A. 3391, 3445, 4134. The jury's role is to "resolve conflicting inferences from circumstantial evidence," so long as it relies on more than "speculation and conjecture." *Wratchford v. S.J. Groves & Sons Co.*, 405 F.2d 1061, 1066 (4th Cir. 1969). Based on the evidence presented, the jury was permitted to infer that the damage occurred after 2016.

Third, CMIC contends that the snowstorm was not fortuitous, as required by *Avis* to permit recovery. 195 S.E.2d at 148. An event is fortuitous when it is "not certain to occur." *Id.* Hogan testified that the snowfall was "heavier than what that part of North Carolina is accustomed to[,]" J.A. 3579, and CMIC does not point to any evidence that would

7

undermine that assertion. The jurors were also instructed to weigh the evidence "in light of [their] common sense[.]" J.A. 4079. Relying on Hogan's testimony and common sense, a rational factfinder could conclude that the 2018 snowstorm was fortuitous and thus recovery was permitted.

Fourth and finally, CMIC argues that Hogan's testimony left the jury to speculate as to the cause of the roof's damage. But as Wake Chapel notes, Hogan did not express uncertainty as to his ultimate conclusion—he stated, without reservation, that the 2018 snowstorm caused new damage to the roof. J.A. 3580, 3616. That testimony is sufficiently concrete to sustain the jury's verdict. *See Sylvia Development Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995) ("[I]t is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.").

In sum, the record does not indicate that "the only conclusion a reasonable jury could have reached is one in favor of [CMIC]." *Plyler v. Cox*, 145 F.4th 501, 508 (4th Cir. 2025). Because CMIC's arguments fall short of that high bar, we conclude that the district court did not err in denying CMIC's motion for judgment as a matter of law or, in the alternative, a new trial.

## C.

The district court found that the jury was entitled to award damages on an actual cash value ("ACV") basis and that Wake Chapel adduced adequate evidence of the cost of repairing the roof damage. We agree.

8

Given that "damages awards are governed by state law when a federal court sits in diversity, we look to North Carolina law to see what is required for a jury to award damages." *Wiener v. AXA Equitable Life Ins. Co.*, 153 F.4th 413, 418 (4th Cir. 2025). When that issue is presented in the context of a post-trial motion for judgment as a matter of law, "we ask whether there was enough evidence that, when construed in the light most favorable to [Wake Chapel], was specific and complete enough to allow the jury to arrive at a reasonable conclusion about the amount of damages to award." *Id.* at 419.

Here, the jury was tasked with deciding two distinct questions: (1) whether Wake Chapel made claims on an ACV basis, and if so, (2) the amount of damages recoverable on that basis. The jury concluded that Wake Chapel was entitled to $1.1 million on an ACV basis. As to the first question, the Policy permitted Wake Chapel to receive payment based on ACV or replacement cost value. *See* J.A. 173, 217. Wake Chapel adduced testimony that CMIC paid for other claims submitted by Wake Chapel on an ACV basis, which the district court instructed the jury to consider as evidence of "a course of conduct" between the parties. J.A. 3744–45. That evidence adequately supports the jury's conclusion to proceed on an ACV basis.

As to the second question, both parties offered evidence of the cost to repair the Sanctuary's roof on an ACV basis. Wake Chapel's public adjuster estimated that it would cost $2.5 million, a roofing company estimated $2.2 million, and CMIC's expert estimated $1.1 million. The jury found that $1.1 million was the cost to repair the Sanctuary's roof. CMIC's expert testimony "was specific and complete enough to allow the jury to arrive at a reasonable conclusion about the amount of damages." *Wiener*, 153 F.4th at 419.

9

Therefore, the district court did not err in denying CMIC's motion for judgment as a matter of law on this point.

## III.

For the foregoing reasons, the district court's judgment is

*AFFIRMED.*